LANDRY, Judge.
Plaintiff, Barbara Thibodaux LeCompte, instituted this action, individually and as natural tutrix of her late husband’s posthumous child, to recover workmen’s compensation benefits allegedly due for decedent’s death resulting from an accidental self-inflicted gunshot (pistol) wound purportedly occurring during the course and arising out of decedent’s employment by defendant, Fred Kay, d/b/a Kay Oil Tool Company, admittedly engaged in a hazardous business. The trial court rejected plaintiff’s demands for compensation death benefits on the ground the deceased employee was not acting within the scope or during the course of his employment at the time of the accident and also found the record supported appellees’ alternative contention decedent’s accidental injury and death was due to decedent’s inebriation at the time of the fatal incident. From said adverse judgment plaintiff has appealed.
The facts giving rise to this litigation are not in dispute. There is, however, considerable difference of opinion between opposing counsel regarding the interpretation of the admitted facts as well as the law applicable thereto. Insofar as they are pertinent to the legal issues herein presented for determination, the facts may be summarized as follows:
Decedent, Errol Jean LeCompte, husband of plaintiff, Barbara Thibodaux Le-Compte and father of the minor, Lisa Ann LeCompte, a young man approximately 20 years of age, was employed by defendant, Fred Kay, in the capacity of warehouseman or handy man. The nature of decedent’s employment required his availability at all hours of the day and night. His duties consisted of whatever services his employer demanded including answering the telephone, receiving and filling orders, driving trucks, making deliveries, cleaning tools and supervising defendant’s warehouse wherein was stored oil field equipment rented by decedent’s employer. For his services decedent received a monthly salary of approximately $400.00.
Although it was not absolutely necessary to the operation of his business, defendant, Kay, owned and maintained a fishing and hunting camp on Bayou Copasaw which camp or lodge was used by defendant for the entertainment of “clients” and “prospective customers”. Approximately two months preceding the fatal accident, defendant commenced to repair and renovate the camp building and certain appurtenances. More precisely, defendant undertook addition of a screened porch to the rear of the existing structure and rebuilding the foundation supporting the water cistern as well as improving and renewing the water pump and piping system. The work then in progress was intermittently performed by Emmett McChargue, a construction carpenter, assisted by William Garrett, a mechanic, said workmen commuting to and from the campsite by means of a boat owned by defendant Kay and placed at their disposal. Both McChargue and Garrett were paid by the hour for services rendered in connection with the work. They kept their own time and reported to their employer the number of hours for which each was due wages.
On the morning of March 30, 1959, defendant arranged for Garrett and Mc-Chargue to resume work on the camp in order to complete the desired repairs. Upon instruction from defendant, McChargue and Garrett were to work that day, spend the night at the camp and finish their assigned tasks the following day. Decedent became aware of the impending visit to the camp and prevailed upon Garrett to request defendant to let him, decedent, accompany McChargue and Garrett to assist them in the remaining work. Defendant acceded to Garrett’s intervention on behalf of decedent and dispatched LeCompte to the camp with instructions to clean up and help in the performance of the remaining work. The record reflects decedent’s assignment was predicated upon his own instigation, his services were not actually .required or necessary at the camp and decedent was delighted at the prospect of ac *77 companying McChargue and Garrett. It appears equally well established, however, decedent was not sent by his employer to the camp solely for decedent’s own recreation and pleasure and that whereas defendant felt he was conferring a favor upon decedent, nevertheless, decedent was expected to clean the camp and prepare meals for the workmen in order that the latter could devote their full time to performance of their respective skills.
On the afternoon of the tragedy, the three employees boarded defendant’s boat at a location known as Gofsco which the record reveals to be situated approximately 25 miles (by water) from defendant’s camp. Prior to leaving, the trio purchased a quantity of beer estimated at between 12 and 14 bottles. The journey to the camp involved a ride of approximately one and one-half hours duration in the course of which a portion of the beer was consumed by the three men in approximately equal portions. Upon arriving at the camp at approximately 4:30 P.M., however, neither McChargue nor Garrett felt an impelling urge to work and it was immediately decided the three companions would spend the remainder of the afternoon fishing, in which sport they indulged themselves until approximately dark or about the hour of 6:30 P.M. During the interlude devoted to the above mentioned personal pursuit the remainder of the beer was consumed.
Although there is some testimony of record to the effect defendant had previously informed McChargue and Garrett guns were not permitted at the camp except during hunting season, Garrett and decedent had each taken along a .22 caliber pistol. It is conceded decedent engaged in some target practice during the time spent fishing and also upon returning to the camp thereafter.
When darkness necessitated abandonment of the aforesaid recreational pursuits, the party returned to the camp and Garrett immediately commenced preparation of the evening meal which consisted of steak and potatoes. While Garrett was preparing supper decedent occupied his time by continuing practice shooting from the camp porch. Occasionally decedent would come inside, lie down on a bed for a short while and resume his target practice by either firing his weapon from the porch or standing in the doorway of the camp and firing at objects outside. When the meal was ready, decedent was summoned but he declined to eat and lay on his bed instead. McChargue and Garrett proceeded to eat their meal during which they were exhorted by decedent to hurry so that they could all go out and shoot nutria for amusement. At about this time McChargue proceeded to cook the few fish caught during the afternoon. Garrett .rose from the table to assist McChargue in cooking the fish and while both men had their backs turned they heard a pistol shot. Upon turning around they observed LeCompte had fallen to the floor. Examination revealed LeCompte had been shot. LeCompte was immediately taken by boat to a nearby landing to seek medical aid and call an ambulance, but he was dead upon arrival. The unfortunate accident occurred at approximately 8:30 P.M.
According to long established principles of law obtaining in this state, an employer’s liability for workmen’s compensation benefits is predicated upon accidental injury or death arising out of and in the course of the employee’s employment. LS A-R.S. 23:1031.
In the case at bar appellees maintain the accident in question did not arise out of or in the course of decedent’s employment by defendant, Kay, because at the time decedent was performing no services for his employer and was engaged in a purely personal pursuit during leisure hours. Appellants maintain, however, the accident occurred during the course and arose out of decedent’s employment by defendant, Kay, because, at the time of the accident, decedent was in the camp of defendant to spend the night as required by his job assignment. Further, appellants argue, considering decedent was employed on a month *78 ly basis subject to 24 hour duty, he was in fact within the course of his employment during his entire stay on defendant’s said premises. Concerning the question of whether decedent’s accidental death arose out of his employment by defendant, it is appellants’ position, predicated upon Livingston v. Henry & Hall, La.App., 59 So.2d 892, and Edwards v. Louisiana Forestry Commission, 221 La. 818, 60 So.2d 449, an employee’s injury or death arises out of his employment whenever his employment requires his presence at the place where the accident occurs at the time of its occurrence.
From the foregoing statement of appellants’ position, it is readily apparent appellants regard the phrases “arising out of" and “in the course of” as virtually synonymous both depending, according to our understanding of the position taken, upon the requirements of the employment with respect to time and place. Conceding the terms “arising out of” and “in the course of” as contained in the cited statute, have at times been apparently used interchang-ably thereby tending, in some instances, to create the impression of similarity, nevertheless, our review of the jurisprudence reveals, for reasons hereinafter discussed, said terms have repeatedly and consistently been held to constitute separate and distinct concepts irrespective of how difficult and tenuous their respective proper application may sometimes become.
An excellent statement of the nature of the concepts of the terms “arising out of” and “in the course of” as used in the here-inabove cited section of our workmen’s compensation law, and the problems posed by the application of each, is found in Malone, Louisiana Workmen’s Compensation Law and Practice, Section 162, pages 173-174, the following portion of which we cite with approval:
“Section Two of the Louisiana Workmen’s Compensation Act provides that the employer shall pay compensation to the employee who ‘receives personal injury by accident arising out of and in the course of (his) employment.’ As indicated previously, the terms arising out of, and in the course of are not synonymous. The former suggests an inquiry into the character or origin of the risk, while the latter brings into focus the time and place relationship between the risk and the employment. If, for example, an employee were struck by lightning at a time when he was occupied with his employer’s work, there would be little doubt that the accident occurred in the course of the employment. There would still remain, however, the question of whether injury or death by lightning is a type of risk that falls within the protection of the statute. The prominent problem is, does the accident arise out of the employment? Conversely, if a person employed to drive trucks were injured in an automobile collision while returning home at the close of his day’s work, there would be little doubt that the risk of collision is one against which a truck driver is protected by the Act. The problem remains, however, did the accident happen in the course of his employment? Was the relationship of time and place between accident and employment sufficiently close to bring the situation within the statute?
“Often both problems are prominent in a single situation: An employee is struck by lightning or injured by a tornado during lunch hour, or while resting, or while going home at the close of the day’s work. The possibilities of combination are unlimited, yet a recognition of the separate character of the two inquiries will assist the judge or lawyer in coming to grips with such problems.
“This does not suggest, however, that the character or origin of the risk is a matter that can be ignored when a question regarding the course of the employment is in dispute. The fact that the accident was of a type closely as *79 sociated with the nature of the employment is very likely to influence the court in favor of the employee where the time-place relation between accident and job is fairly in doubt; and again, conversely, an employee who was injured while directly engaged in his duties may well be protected against risks which would be excluded from coverage if they had befallen him while he was loitering or temporarily attending to his personal affairs. * * * ”
In dealing with the complex issue presented, where the question is whether the employment required the employee’s presence in a certain place at a certain time, as a rule the problem is regarded as one to be resolved in terms of whether the accident occurred during the course of the employee’s employment. Where, however, the problem addresses itself to the type of risk to which the employee is subjected the issue is generally regarded as relating to whether the accident arose out of the employment. Conceding the two concepts to be so interrelated as to cause some uncertainty in application, nevertheless, we believe they simultaneously possess such distinctiveness, separability and flexibility as to insure their proper application to the circumstances of each particular case as we shall now attempt to illustrate. Where, for example, an employee is actively engaged in his work at the time of the accident to the extent the service being performed is squarely within the course of his employment the courts have tended to regard any risk as “arising out of” the employment and therefore compensable. Where the nature of the risk is natural to, inherent in and reasonably contemplated in the particular employment so that the accident is one clearly “arising out of” the employment the courts have tended to liberally interpret the concept of the concomitant phrase “during the course of”. Where, however, the accident occurs at a time and place which may be only marginally considered as “during the course of” the employment the courts are careful to limit and restrict the character of risks deemed as “arising out of” the employee’s employment.
We again refer with approval to Professor Wex S. Malone’s statement of the problem appearing in Malone, Workmen’s Compensation Law and Practice, Chapter 9, Paragraph 192, pages 229-230, as follows :
“The terms during the course of and arising out of are not independent notions which can be considered in isolation from each other. At certain times the worker will be protected against virtually any risk he may encounter. These are the times when his activities are very closely connected with his employer’s business and it can be said that he is acting in direct response to the call of duty. At other times, when the activities of the worker bring him barely within the outer fringe of his employment he will be protected only against risks which can be closely associated with the nature of his duties or with the circumstances under which he is obliged to work and live. In other words, during these latter times he is within the course of employment only with reference to a fairly limited group of employment risks. * * * ”
In further discussion of the subject matter under consideration, Mr. Malone states:
“An employee who is injured or killed at a time when he is acting in direct obedience to orders should be protected against virtually any risks he may encounter. On the other hand, at times when the relationship between the employee’s actions and the necessities of his employer’s business is less definite the employee may be protected only against risks which are peculiarly attributed to the circumstances surrounding his work. At such a time those risks which the worker has created for his own pleasure or convenience may be excluded from coverage.” Op. cit. § 197, p. 24S.
*80 Accidents occurring during stand-by periods, authorized lunch hours, and rest periods, and before or after working hours on the employer’s premises raise not only the question of “during the course of employment”, (that is, whether the employment necessitated the employee’s presence in a particular place at a certain time) but also the question of “arising out of the employment”, (which issue addresses itself to the nature of the risk deemed compen-sable in marginal cases), and more particularly whether the risk producing injury is directly connected and, related to the employer’s business or is created by the employee for his own pleasure, entertainment or diversion.
With the foregoing in mind, we are of the opinion the issues presented by the case at bar may be categorized as follows:
(1) Did the accident occur during the course of decedent’s employment where, under the circumstances shown, decedent was on his employer’s premises, in living quarters provided by the employer, at a time when the duties of his employment required his presence there?
(2) If so (and it appears the question answers itself affirmatively considering there is no question but that decedent was expressly assigned to the performance of duties which required his presence on the premises of his employer at the time of the accident), is the accidental discharge of a fr-earm brought on the premises and used for the employee’s personal enjoyment and amusement totally unconnected with the employer’s business, a type of risk which can be deemed to arise from the employment, at the time and place and under the circumstances mentioned? In the opinion of this court we do not believe an injury so occurring may be said to arise out of the employee’s employment.
Mr. Malone has summarized the question as follows:
“ * * * For example, courts are generally unwilling to decide once and for all that an employee who is injured outside working hours but while he is at home in living quarters furnished by the employer is within the course of employment. At such a time, he will be protected against risks that can be attributed to the nature of his job or to perils of his'living conditions which are in some way connected with the circumstances under which he is forced to work and live. He will not, however, be protected against dangers that cannot fairly be associated with his employment. The hired hand who is asleep in a bunkhouse provided by his employer and shared by fellow workers may have compensation if he is, /injured in a stampede that follows a fire alarm, but compensation would probably be denied if he were to slip in the bathtub and sustain serious injury. One risk is brought about by conditions attendant on his employment, the other is not.” (Op.cit. § 192, p. 229.)
Although on occasion the courts have found the accidental discharge of a firearm arose out of the employment, as pointed out by Professor Malone, “ * * * in each instance they have succeeded in finding that the conditions of work enhances the risk of an injury of this kind. Where the prosecution of the employer’s business requires or reasonably contemplates that an employee should carry a weapon, the courts have been ready to find that this increases the risk of accidental shooting both for the bearer of the weapon and for fellow employees, and compensation has been consistently granted.” (Op.Cit. § 19S, p. 239.)
Thus recovery was allowed in Schexneider v. General American Tank Car Corporation, 5 La.App. 84, where an employee was accidentally shot by a night watchman who carried a firearm in the performance of his duties. In Goins v. Shreveport Yellow Cabs, La.App., 200 So. 481, a taxi driver was awarded compensation for an accidental pistol wound sustained upon the discharge of a weapon supplied by his employer for the defense of the driver and company property during a labor dispute in which drivers *81 were robbed and kidnapped and cabs stolen. The same result was reached in Holland v. Continental Casualty Co., La.App., 155 So. 63, wherein a salesman was injured by the accidental discharge of a shotgun which he carried in his employer’s automobile. The injury was therein held compensable because the transportation of valuable merchandise, cash and checks collected from customers necessarily exposed the employee to risks greater than those attending other employment and the employee was injured by the firearm which he carried to protect himself from such additional risks.
In the case at bar defendant, Kay, concedes he did not expressly forbid the possession of firearms at the camp on the occasion in question although it is quite clear he had on previous occasions informed both McChargue and Garrett he did not want firearms in the camp. While the record does not establish with certainty decedent’s awareness of Kay’s prohibition against firearms in the camp, this factual issue is not necessarily determinative of the question presented for resolution. Of more importance and significance, however, is the finding that the weapon taken to the camp by decedent had absolutely no connection whatsoever with the employer’s business or the work to be done by decedent employee, or for that matter, by any of defendant’s employees present at the camp at the time of the fatal accident. The instant record is clear beyond any doubt the firearms brought on the employer’s premises by Garrett and decedent were intended solely, only and exclusively for the amusement and entertainment of said employees. Additionally, it is equally clear from the record before us, decedent’s injury was sustained while he was engaged in the purely personal pursuit of practice shooting of a firearm, more particularly by the accidental discharge of a weapon brought on the premises for recreational activities totally unrelated to decedent’s employment.
Edwards v. Louisiana Forestry Commission, 221 La. 818, 60 So.2d 449, cited and relied upon by esteemed counsel for appellants, is inapposite to the case at bar. In the cited case an employee on a watchtower descended therefrom to rescue a child being attacked by a dog and in so doing, the employee suffered an injury. The court therein found the rescue of a person in danger on the employer’s premises was an obligation of the employee contemplated by his employment. Predicated upon such finding, the injury was deemed to have occurred while the employee was actively engaged in the performance of his duties.
Also inapplicable to the instant case is the decision rendered in Livingston v. Henry & Hall, La.App., 59 So.2d 892, wherein an employee was shot and killed by a j ealous husband who suspected the employee of having paid improper attention to his wife. At the time of the homicide the employee was actively at work and the encounter was by chance. In granting compensation under such circumstance, the court emphasized that the employee’s presence at the place and time of the fatal incident as required by his work was the cause of the chance encounter which resulted in his death. The case is readily and clearly distinguishable from the case at bar in that the employee therein was actively engaged in his employer’s business at the time of the accident and as herein previously shown under such circumstances, such a risk may be considered to arise from the employment. In the instant case, however, the accident occurred after working hours while the employee was engaged in a purely personal endeavor, namely, his own amusement and recreation. Under the circumstances obtaining herein, only such risks as are connected with the employment may be deemed to arise out of the employment.
We are aware it has been held that where negro laborers were imported from neighboring areas into an area of anti-negro sentiment by a contractor who provided a camp guarded by highway commission guards and a negro employee was shot by an unknown assailant while asleep in a tent, the accident was held to have risen out of the employment. Ivory v. Philpot Const. *82 Co., La.App., 145 So. 784. However, in the cited case the injury producing risk was created by and incident to the presence of the employee in a place of danger, his presence in such place being required by the nature of the employer’s business. In the case at bar we find no such connection between the risks which resulted in decedent’s death and either the duties of decedent’s employment or the necessity of decedent’s presence upon his employer’s premises at the time of the accident.
In Laperouse v. McWilliams Dredging Co., La.App., 35 So.2d 481, the employer provided living quarters for the employees on a dredge boat. After working in mud and slime on a hot day the employees were returning to their quarters by boat where upon arrival, several of the employees went into shallow water near the quarters to wash and cleanse themselves. While so engaged, one of the employees drowned. In disposing of defendant’s exception of no cause of action leveled at plaintiff’s petition, the court held the mere fact that the accident happened after working hours did not necessarily preclude injury within the course of employment where the necessities of the employment required the employee’s presence in the place and at the time of injury. The court further stated, however, plaintiff, to recover, must show the activity of washing off mud and slime of the swamp resulting from performance of decedent’s employment was connected with the employment in order to render the injury compensable as arising out of the employment. In remanding the matter for trial the court stated that if on the merits the employer was able to show proper facilities were furnished the employees for the purpose of cleaning their persons -and that bathing or cleansing themselves in the water was unnecessary, unconnected and unrelated to the employment, but rather a swim indulged in for the employee’s own enjoyment and pleasure, there could be no recovery.
In summary, notwithstanding decedent’s injury may be said to have occurred in the course of his employment in that it occurred on his employer’s premises under circumstances which required the employee to be on the premises after working hours, nevertheless, the use of pistols after working hours for the employee’s own enjoyment and pleasure, totally unconnected with or related to the business of the employer, may not be said to have risen out of the employment and is, therefore, not compensable.
The reasons hereinabove set forth obviate the necessity of detailed consideration of appellee’s alternative defense of intoxication. In fairness, however, we wish to state that not only was the degree of decedent’s alleged intoxication not definitely established but also the record is barren of evidence from which it could be reasonably concluded the accident was attributable to decedent’s excessive imbibing of alcohol.
Accordingly, the judgment of the trial court is affirmed.
Affirmed.