204 So.2d 61 (1967)
John Spurgeon POWELL, In his capacity as the duly qualified Tutor of the Minors, John Edward Powell and Tommy Powell, et al., Plaintiffs-Appellants,
v.
GOLD CROWN STAMP COMPANY, Inc., et al., Defendants-Appellees.
No. 10858.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1967.
Rehearing Denied November 28, 1967.
*62 Jones, Blackwell, Chambliss & Hobbs, West Monroe, for appellants.
Theus, Grisham, Davis, Leigh & Brown, Monroe, for appellees.
Before GLADNEY, AYRES and BOLIN, JJ.
GLADNEY, Judge.
The question on appeal is whether the fatal injuries to the employee intentionally inflicted by her estranged husband constitute an accident arising out of and in the course and scope of her employment within the meaning of the Workmen's Compensation Act.
All relevant facts have been agreed upon through stipulation. We relate these as necessary for resolving the issue:
Evelyn Ann Powell was fatally shot by her estranged husband, John Sebe Powell, at the Gold Crown Stamp Company, Inc. store in Monroe, Louisiana, on the afternoon of February 16, 1966. At the time and for several years prior thereto she had been employed as a manager of the store and was actively engaged in her employment in the display room at the store when her husband entered from the rear. The store consisted of a display room in the front part, a store room in the center, and an additional store room in the rear which was adjoined by a parking lot. Powell first accused an employee, Keith Pierce of Gold Crown Stamp Company, Inc., of kissing the said Evelyn Ann Powell and then insisted upon talking to her on the outside, but she refused to leave her place of employment. Upon realizing there was going to be trouble if she did not talk to him, she agreed to and walked into the second stock room, leaving the door open between the stock room and the display room. Pierce stood in the doorway between the display room and the stock room and observed the two engaged in conversation. He saw Powell display a pistol and then replace it in his pocket, and was 20 feet distant from Mrs. Powell and her husband when Powell forced his wife behind some strong steel shelving. Within a few minutes thereafter Pierce heard two shots. Evelyn Ann Powell was found fatally wounded behind the steel shelving and John Sebe Powell was found dead a few feet from her with the pistol by his side. In her capacity as manager for the Gold Crown Stamp Company, Inc. Evelyn Ann Powell worked in all three rooms of the store. The room wherein she was shot was a store room in which articles were stored and from which they were delivered to customers in exchange for stamps. Mrs. Powell's duties also required that she take the articles shipped to the room from the shipping crates and place them in the stock room. She was responsible for the overall conduction of the business of her employer on the premises.
In his capacity as Tutor, John Spurgeon Powell on behalf of the two minor children of Evelyn Ann Powell, John Edward and Tommy Powell, seeks recovery of the benefits to which they are entitled under the workmen's compensation law, together with interest, penalties, and attorneys' fees. Claudia Greer, as Administratrix of the Estate of Evelyn Ann Powell, sues for recovery of medical bills and the funeral bill of the deceased employee.
*63 The trial judge assigned reasons for judgment in a carefully and thoroughly written opinion, holding that when Evelyn Ann Powell left the front of the store and went into the other room to talk to her husband about their personal affairs, she was engaged about her own personal business and not about the business of her employer. The opinion reflects the views supported by appellee with citations of Moss v. St. Paul-Mercury Indemnity Company, La.App., 35 So.2d 867 (1st Cir. 1948), Seals v. City of Baton Rouge, La.App., 94 So.2d 478 (1st Cir. 1957, cert. denied), Mabry v. Fidelity & Casualty Company of New York, La. App., 155 So.2d 44 (2nd Cir. 1963, cert. denied), LeCompte v. Kay, La.App., 156 So. 2d 75 (1st Cir. 1963, cert. denied) and Blake v. Fidelity & Casualty Company of New York, La.App., 169 So.2d 608 (2nd Cir. 1964).
Awards of workmen's compensation were made in the following cases which plaintiffs have cited as controlling the issues presented herein: Rosenquist v. New Amsterdam Casualty Company, La.App., 78 So. 2d 225 (Orl.1955); St. Alexandre v. Texas Company, La.App., 28 So.2d 385 (Orl.1946 cert. denied); McCain v. Travelers Insurance Company, La.App., 153 So.2d 124 (3rd Cir. 1963); Harvey v. Caddo DeSoto Cotton Oil Company, Inc., 199 La. 720, 6 So.2d 747 (1942); Edwards v. Louisiana Forestry Commission, 221 La. 818, 60 So.2d 449 (1952); Livingston v. Henry & Hall, La. App., 59 So.2d 892 (2nd Cir. 1952); Williams v. United States Casualty Company, La.App., 145 So.2d 592 (4th Cir. 1962 cert. denied); Rogers v. Aetna Casualty & Surety Company, La.App., 173 So.2d 231 (3rd Cir. 1965); Simmons v. Liberty Mutual Insurance Company, La.App., 185 So.2d 822 (3rd Cir. 1966); Carter v. Lanzetta, 249 La. 1098, 193 So.2d 259 (1966); Bates v. Gulf States Utilities Company, 249 La. 1087, 193 So.2d 255 (1966).
Whether or not an accident or injury occurred in the course of and arose out of the employment has been the source of a great deal of litigation. As Justice Provosty in the Myers v. Louisiana Railway & Navigation Company, 140 La.Ann. 937, 74 So. 256 (1917) case concluded, no exact formula can be laid down which will adequately solve every case. He said:
"* * * after vain attempts at formulating some verbal test for determining when the injury has or not arisen out of the employment, the courts have come to the conclusion that each case must be determined from its own facts; that the question cannot be solved by phrases." [74 So. 256, 258]
The test prescribed in the landmark case of Kern v. Southport Mill, Ltd., 174 La. 432, 141 So. 19 (1932) for determining whether or not an accident arose out of the employment, has exercised the strongest influence on our courts. Malone's Louisiana Workmen's Compensation Law & Practice, concluded the decision held that:
"* * * an accident arises out of the employment if the employee was engaged about his employer's business at the time of the accident and the necessities of the employer's business required that he be at the place of the accident at the time the accident occurred." [Malone's Louisiana Workmen's Compensation Law & Practice, p. 225]
This test has sometimes been referred to as the time, place and circumstance doctrine. In Malone's work, supra, he made the following comment which appears pertinent:
"The observation has been made in previous sections that an employee is acting in the course of his employment while he is actually engaged in his employer's work even before or after working hours. Furthermore, even if he has finished the day's work and is preparing to leave, or is in the act of leaving, he is entitled to a reasonable period while still on the premises which is regarded as within the course of the employment. The working day embraces these intervals just as it *64 includes reasonable periods for rest, relaxation or the attendance of personal needs. This applies also to periods prior to the actual beginning of work under similar circumstances." (Emphasis supplied) [Chapter 8, § 169, p. 193]
Hartford Accident & Indemnity Company v. Cardillo, 72 App.D.C. 52, 112 F.2d 11, 15 (cert. denied, 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415, 1940), a landmark case in workmen's compensation law, observes the need for recognizing that environment created by the work includes associations as well as conditions, and that associations include the faults and derelictions of human beings as well as their virtues and obediences. The court then made this comment:
"* * * Men do not discard their personal qualities when they go to work. Into the job they carry their intelligence, skill, habits of care and rectitude. Just as inevitably they take along also their tendencies to carelessness and camaraderie, as well as emotional make-up. In bringing men together, work brings these qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flare-up. Work could not go on if men became automatons repressed in every natural expression. `Old Man River' is a part of loading steamboats. These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment." [112 F.2d 11, 15]
Prior to the Kern case the Supreme Court considered the case of Myers v. Louisiana Railway & Navigation Company, supra, which had enunciated the rule that the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed.
We are not inclined to a discussion of the tests of liability as set forth in Myers and Kern. Both cases have been regularly cited with approval in our appellate decisions and an analysis of each is to be found in Malone, supra, pp. 225-230. Our review of decisions found in the jurisprudence of this state indicates that the majority of the appellate court decisions, including those of the Supreme Court, have followed the time, place and circumstance doctrine of the Kern case.
The facts and issues found herein, in our opinion, bear a closer analogy to those in Livingston v. Henry & Hall, Williams v. United States Casualty Company, and Rogers v. Aetna Casualty & Surety Company, supra.
The employee in Livingston v. Henry & Hall was shot and killed by a third party because of some improper attention which the decedent was supposed to have paid to the assailant's wife. The court held that the accident arose out of the employment and thus was compensable, reasoning that the deceased would not have lost his life except for the fact that he was working on the road at the particular time and place when his assailant was on his way to try to effect a reconciliation with his wife. The author of the opinion in the Rogers case observed that in Livingston the court decisioned its case not only on the rule of the Kern case but also on the "zone of special danger" doctrine which had previously been announced by the Supreme Court in Edwards v. Louisiana Forestry Division, supra. In the Williams case the plaintiff was shot and seriously injured by a patron in a saloon where she was employed as a bar maid. The assailant was a man with whom she had formerly lived as man and wife and the animosity between them had no connection with the employment. Compensation was awarded by applying the rule set out in the Kern case, the court holding that the accident was one "arising out of the employment." The court awarded compensation in Rogers v. Aetna Casualty & Surety Company. Therein the deceased employee, Mrs. Kay Jones, was fatally shot by a taxicab driver during her regular working hours as taxicab dispatcher, and *65 while she was engaged in the employer's business. At the time of the shooting the taxi driver was operating his cab from the dispatcher's office where the employee worked. Again the court applied the test announced in Kern v. Southport Mills, supra, which was: Did the necessities of the employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?
Authorities submitted in brief in support of the decision of the trial court denying application of the workmen's compensation act in this case are not controlling herein and are distinguishable upon their own peculiar facts. Thus in Moss v. St. Paul-Mercury Indemnity Company, supra, it was held that recovery of workmen's compensation was not available to a college student who was allowed to drive buses in lieu of cash fare when at the time of an accident to the bus he had permitted another driver to take the controls and on that occasion had never assumed responsibility for his run, but remained in a seat as any other passenger while studying for a test when he was injured in the bus accident. The court found that the relationship between employer and employee was completely suspended and that the injuries received did not arise out of the employment.
Seals v. City of Baton Rouge, supra, was a suit for compensation by the widow of a deceased captain of city police following the death of the captain from a heart attack while he was on vacation allegedly caused by worry over the possibility that he would be forced to retire from the police force. It was alleged by the plaintiff that the death of her husband was caused by the demands of the officers of the police department in their efforts to compel him to retire. At the time of the heart attack the deceased was on vacation and entirely separated from his employment. In Mabry v. Fidelity & Casualty Company, supra, a used car salesman fell on an icy sidewalk on his way to purchase bread for his wife to use to feed the birds. This court held that the salesman had deviated from his work and was not then about his employer's business and was acting solely for his own personal benefit.
In LeCompte v. Kay, supra, the employee, who had been sent to his employer's hunting lodge for the purpose of making certain improvements, was accidentally killed after working hours by the discharge of a firearm which he had brought to the premises and used in target practice for his personal enjoyment.
In Blake v. Fidelity & Casualty Company of New York, supra, the employee was injured by his own shotgun when he reached behind the seat in his truck to pick up the loaded shotgun which accidentally discharged. At the time plaintiff was preparing to go squirrel hunting in a wooded tract nearby. The court held that forasmuch as the shotgun was in the control of the employee and was not connected with nor designed for any duties in the use of his employment, and that its accidental discharge was caused by the handling of the weapon in preparation for a personal use entirely disconnected with the employment, the injuries sustained did not arise out of the employment.
The aforementioned authorities tendered as supporting appellees' position are inapposite, in our opinion, as they involve cases wherein the employee had turned aside and was pursuing his own pleasure or business, and the necessities of the employer's business did not require the employee to be at the place of the accident at the time when it occurred. The employer's work was either completely suspended or abandoned when the injury was received.
As it affects liability under the workmen's compensation act our jurisprudence has come forward with the legal principles above enunciated. Recovery of workmen's compensation in the case at hand must be recognized when these legal principles are given application. The facts which are not in dispute produce certain inferences: That the employee was about the employer's business when her work was *66 interrupted by her husband who insisted upon discussing with the employee her personal relationship with another employee; that the interruption took place where the employee was engaged in her work; that the employment contemplated reasonable interruptions for personal reasons; and that after turning aside to converse with her husband a relatively short interval of time elapsed before the accident occurred. These circumstances show there was not such a deviation as will justify a finding that the employee had abandoned the work of her employer. Therefore, we hold that the accident occurred in the course of and arose out of the employment.
The appellants have included in their demands a demand for attorneys' fees, the allowance of which is provided for in LSA-R.S. 22:658, which prescribes that a failure "[of the insurer] to make such payment within 60 days after receipt of such proof and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause" shall subject the insurer to penalties and attorneys' fees as therein set forth. As pointed out, supra, the issue of liability as presented herein must be resolved upon the basis of the record, and in formulating rules of decision the courts have held that each case must be determined from its own facts. The facts and circumstances, though ascertained and known to the insurer, left for its determination the question as to whether the injuries sustained by the employee arose out of the employment. This question undoubtedly was legally passed upon by its counsel. After consideration the trial court held there was no liability on the part of the insurer. The extensive briefs presented to this court and the scholarly opinion of the trial judge give every indication that the action of the insurer in denying liability was not unreasonable. Indeed, legal scholars have disagreed with the conclusion of liability in the Williams and Livingston cases and many are strongly of the opinion that the Kern rule, as applied in cases of this kind, is inadequate for not requiring a stronger showing of causation in the determination of liability. The words "arbitrary" and "capricious" are practically synonymous and mean without reasonable cause and do not necessarily imply an opprobrious connotation. Arbitrary action is based upon one's will and usually implies an abuse of one's authority or power. 6 C.J.S. Arbitrary p. 145. Whether the insurance company's refusal to pay was so lacking in foundation or cause to fall within the terms of the statutory penalties is primarily a question of fact. The trial court evidently concluded there was good faith. This court in Chase v. Warren Petroleum Corporation, La.App., 168 So.2d 861 (2nd Cir. 1964), in determining whether an award for total and permanent disability was proper, considered the arguments advanced with reference to a claim for penalties and attorneys' fees and made this pronouncement:
"* * * These conclusions might have reasonably been reached in good faith by the defendants. It was only when all facts were presented and analyzed after trial that the proper conclusion of total permanent disability could be reached. This was effected by judicial pronouncement. We find no indication of any willful, capricious or arbitrary action on the part of defendants in denying plaintiff's claim. Penalties are stricti juris and should be enforced only in those instances in which the facts clearly negate good faith and just cause in connection with the refusal of the allowance of compensation; Charleston v. American Ins. Co. (La.App. 1st Cir. 1961, writs denied), 136 So.2d 495; Cahee v. United States Casualty Co. (La.App.2nd Cir. 1956), 86 So.2d 631; Puchner v. Employers' Liability Assurance Corp., 198 La. 921, 5 So.2d 288." [168 So.2d 861, 865]
We find ourselves in a position where we cannot with assurance say that the insurer in this instance was without reasonable grounds in litigating its cause.
*67 It is our conclusion that there should be judgment awarding compensation, and accordingly, the judgment appealed will be reversed. Attorneys' fees and penalties will not be awarded.
It is further ordered, adjudged and decreed that there be judgment herein in favor of petitioner, John Spurgeon Powell, in his capacity as Tutor of the minors, John Edward Powell and Tommy Powell, and against the defendants, Gold Crown Stamp Company, Inc. and Aetna Casualty & Surety Company, in solido, for compensation at the rate of $32.19 per week for four hundred weeks beginning February 15, 1966, with interest thereon at the rate of five per cent per annum on each past-due installment from its due date until paid; and that there be judgment herein against defendants, in solido, in favor of petitioner Claudia Greer in her capacity as Administratrix of the Estate of Evelyn Ann Powell, in the full sum of $863.95 for medical and funeral expenses of decedent Evelyn Ann Powell, together with interest thereon at the rate of 5% per annum from date of judicial demand until paid.
Defendants are cast with all cost of this suit.