222 So.2d 530 (1969)
George GORINGS
v.
Leo Ernest EDWARDS.
George GORINGS
v.
AMERICAN SUGAR REFINING COMPANY.
Nos. 3383, 3384.
Court of Appeal of Louisiana, Fourth Circuit.
May 5, 1969.
Rehearings Denied June 2, 1969.
Smith, Scheuermann & Jones, Arthel J. Scheuermann, New Orleans, for plaintiff-appellee.
Chaffe, McCall, Phillips, Burke, Toler & Sarpy, George A. Kimball, Jr., and Peter A. Feringa, Jr., New Orleans, for American Sugar Refining Co., defendant-appellant.
Before SAMUEL, HALL and BARNETTE, JJ.
HALL, Judge.
At about 6:30 A. M. on October 3, 1963 George Gorings, an hourly paid laborer employed by American Sugar Refining Company, was proceeding along a company owned and controlled roadway on his way to punch the time clock for the 7:00 A. M. shift when he was attacked with a claw hammer by Leo Ernest Edwards as the result *531 of which plaintiff suffered permanent damage to his left eye and other injuries.
On August 6, 1964 Gorings filed a tort suit (our No. 3383) against Edwards and subsequently by supplemental petition made American Sugar Refining Company a codefendant therein as a joint tort feasor.
On October 2, 1964 Gorings filed suit (our No. 3384) for workmen's compensation against American Sugar Refining Company.
American Sugar Refining Company intervened in the tort suit for reimbursement of the amount of any compensation it might be required to pay Gorings, and also filed a third-party petition in the compensation suit seeking indemnification against Edwards in the amount of any judgment which might be rendered against it therein.
The two suits were consolidated for trial which resulted in the rendition of a single judgment:
a) In favor of plaintiff against American Sugar Refining Company for workmen's compensation at the rate of $35.00 per week for 100 weeks commencing October 3, 1963 plus interest from due dates until paid, and a further judgment in plaintiff's favor for medical expenses in the amount of $979.85 and for costs;
b) in favor of plaintiff against Leo Ernest Edwards for damages in the sum of $8,000.00 plus interest and costs and in favor of American Sugar Refining Company, plaintiff in intervention, for the amount it was cast for workmen's compensation and medical expenses. Plaintiff's suit against American Sugar Refining Company as a joint tort-feasor was dismissed.
American Sugar Refining Company appealed from the workmen's compensation judgment rendered against it. There were no other appeals nor answers to the appeal.
The sole issues are whether plaintiff was injured in the course of his employment within the meaning of LSA-R.S. 23:1031 and whether plaintiff's injuries arose out of his employment within the meaning that section of the Revised Statutes.
There is no serious dispute relative to the facts.
Plaintiff was employed as an hourly paid laborer at the American Sugar Refining Company's refinery at Chalmette, Louisiana. He was married and lived with his wife and children in New Orleans. Several months before the date of his injury he had met Helen Edwards, wife of Leo Ernest Edwards, and had developed a close relationship with her which quickly became an illicit romance. During these months Leo Edwards was confined to the Veterans Hospital at Alexandria. Neither Helen Edwards nor her husband, Leo, were or ever had been employed at the American Sugar Refining Company.
On the morning of October 3, 1963 after having picked up Helen Edwards and dropping her off at work in New Orleans, plaintiff drove his automobile to the American Sugar Refinery and parked it in the parking lot provided for the hourly paid employees. While plaintiff was walking from the lot down a roadway to reach the turnstile through which all employees must pass to punch the time clock, Leo Edwards (who while in the hospital had learned of plaintiff's affair with his wife and who had just returned to New Orleans) accosted plaintiff and attacked him with a claw hammer. As a result of the attack plaintiff suffered an eye injury described as a dislocated lens with secondary glaucoma and iritis, and other injuries not at issue.
Edwards had been released from the hospital and had returned to New Orleans just the night before his assault upon plaintiff. It is apparent from his testimony that all he knew about the plaintiff, Gorings, was his name, the type and color of his car and that Gorings worked at the American Sugar Refinery. There is nothing in the record to indicate that he knew where Gorings lived, the places he frequented or even what he looked like. Edwards testified that his contact with Gorings *532 came about as follows: He spent the night of his return at his home. The next morning while walking to church he was picked up by a friend who was going that way. While riding with his friend he happened to see his wife in a car ahead of them and watched her as she got out of the car at her place of employment and kissed the driver goodby. Wishing to follow this car he asked his friend to drive him to the river and then to the Chalmette slip on the pretext that he wished to see how the fishing was, the slip being his favorite fishing spot. They arrived at the main gate of the refinery just as the occupant of the car he was following entered the refinery parking lot. He grabbed what he thought was a piece of wood but which turned out to be a claw hammer, got out of his friend's car and started walking toward the parking lot just as plaintiff left the parking lot on his way to the main gate. When they met he asked if that was Gorings and then struck him several times with the hammer rendering him unconscious.
The attack took place at approximately 6:30 A. M. as plaintiff was on his way to punch in for the 7:00 A. M. shift. It was the custom of the sugar company to permit its employees to begin punching in at 6:30 A. M. and most of them did so.
The roadway where the attack took place is owned and controlled by the American Sugar Refining Company. The only way to get from the company owned parking lot into the refinery itself is to proceed down this roadway to the main gate, enter the main gate which fronts on this road, and proceed past the guard to the time clock. There is a fence surrounding the actual working premises of the refinery so that the main gate is the only entrance and exit to the refinery itself. The attack upon plaintiff took place approximately half way between the parking lot and the main gate.
Although defendant's counsel admits that the sugar refinery owns the land over which the road on which the accident occurred runs, he argues that it is open to the public and is merely an extension of the so-called River Road which runs between Arabi and Chalmette. However the record reveals that the road is entirely under the control of the sugar refinery, is policed by it and is closed at times. Only occasionally do other than refinery cars pass along the road.
The Trial Judge rendered written "Reasons for Judgment" as follows:
"The Court finds the accidental injury plaintiff suffered arose in the course and scope of his employment. He was, at the time of his injury, on company property walking away from a company owned parking lot along a company owned roadway within the grounds or premises of the company plant on his way to punch the time clock. When the plaintiff reached a point about midway between the parking lot and the time clock, he was acosted (sic) and injured by the defendant, Edwards, who, although not an employee of the defendant company, had been allowed to enter the company premises. Our Workmen's Compensation Statute envisions an extension of coverage to employees from the time they reach their employer's premises until they leave. Carter vs. Lanzetta [249 La. 1098], 193 So.2d 259 (1966), Southern Stevedoring Co. vs. Henderson, 175 F.2d 863 (1949), Baker vs. Texas Pipe Line Co., 5 La.App. 25. See also Nesmith vs. Reich Bros., 14 So.2d 767 (1943), Walker vs. Lykes Bros.-Ripley SS Co., 166 So. 624 (1936).
"The present facts also clearly meet the tests set forth in the following cases: Powell vs. Gold Crown Stamp Co., 204 So.2d 61, Livingston vs. Henry & Hall, 59 So.2d 892; William vs. U. S. Casualty Co., 145 So.2d 592; Rogers vs. Aetna Casualty Co., 173 So.2d 231; Kern vs. Southport Mills [174 La. 432], 141 So. 19 (1932)."
*533 In order for an injured employee to be entitled to workmen's compensation benefits it is necessary that the injury arise out of and in the course of his employment. LSA-R.S. 23:1031. The terms "arising out of" and "in the course of" are not synonymous. Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256; Kern v. Southport Mill, Limited, 174 La. 432, 141 So. 19; LeCompte v. Kay, 156 So.2d 75, writs refused, 245 La. 91, 157 So.2d 233.
"* * * As indicated previously the terms arising out of and in the course of are not synonymous. The former suggests an inquiry into the character or origin of the risk, while the latter brings into focus the time and place relationship between the risk and the employment. If for example, an employee were struck by lightning at a time when he was occupied with his employer's work, there would be little doubt that the accident occurred in the course of his employment * * *" Malone, Louisiana Workmen's Compensation, Sec. 162.
We have little difficulty in finding that plaintiff was injured during the course of his employment. He was injured on his employer's premises at a reasonable time before working hours and while he was proceeding to enter upon his duties. Both the elements of place and time were present. See Carter v. Lanzetta, 249 La. 1098, 193 So.2d 259; Baker v. Texas Pipe Line Company, 5 La.App. 25.
Mr. Wex Malone has this to say:
"* * * Furthermore, even if he has finished the day's work and is preparing to leave, or is in the act of leaving, he is entitled to a reasonable period while still on the premises which is regarded as within the course of the employment. The working day embraces these intervals just as it includes reasonable periods for rest, relaxation or the attendance of personal needs. This applies also to periods prior to the actual beginning of work under similar circumstances." Malone, Louisiana Workmen's Compensation, Sec. 169.
Having determined that plaintiff was injured in the course of his employment we must now consider whether such injuries arose out of his employment.
There are principally two tests to determine whether an accident arose out of the employment. One rule resulted from the decision of the Supreme Court in Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256. The so-called "Myers rule" which is correctly set out in the syllabus is as follows:
"The test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment."
The other rule or test, the so called "Kern rule", emanates from the Supreme Court's decision in Kern v. Southport Mill, Limited, 174 La. 432, 141 So. 19. In that case the Court said:
"* * * And, when one finds himself at the scene of accident, not because he voluntarily appeared there but because the necessities of his business called him there, the injuries he may suffer by reason of such accident `arise out of the necessity which brought him there, and hence `arise out of his employment, if it so be that he was employed and his employment required him to be at the place of the accident at the time when the accident occurred.
"In determining, therefore, whether an accident `arose out of the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's *534 business reasonably require that the employee be at the place of the accident at the time the accident occurred?"
In the later case of Harvey v. Caddo DeSoto Cotton Oil Company, 199 La. 720, 6 So.2d 747, the rule announced by the Kern case was quoted and followed by the Supreme Court as being a broader and more liberal rule.
Briefly put the Myers rule is concerned with the character of the risk while the Kern rule is concerned with "time, place and circumstance." The two rules are seemingly inconsistent and have caused considerable confusion in our jurisprudence. See Malone, Louisiana Workmen's Compensation, §§ 191 et seq.
Defendant relies strongly on the Myers rule and the cases following that rule, especially Conaway v. Marine Oil Co., Limited, 162 La. 147, 110 So. 181 and Pickett v. Southern Carbon Co., 7 La.App. 296.
Plaintiff relies on the Kern rule and the cases following that rule particularly Byas v. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303; Rogers v. Aetna Casualty & Surety Company, 173 So.2d 231 (writ refused); Livingston v. Henry & Hall et al., 59 So.2d 892; Williams v. United States Casualty Company, 145 So.2d 592; Powell v. Gold Crown Stamp Company, Inc., 204 So.2d 61.
Professor Malone has thoroughly dealt with these assault cases and the problem of whether they arose out of the employment of the injured party. He concludes:
"It seems proper that the risk of assault should be administered like the risk of lightning or tornado through the timeplace rule of the Kern decision. If the employee was actively engaged in the performance of duties, or if he was preparing himself for his work, or even if he was taking a short permissible rest from his labor, he should be protected against assault without reference to the nature of the difficulty that prompted the attack or the identity of his assailant. If however, at the time of the aggression the victim was only barely within the course of his employment, it may be necessary and proper to determine whether the circumstances under which he worked enhanced the danger of assault. It is noteworthy that in all assault cases which have arisen since the decision in Kern v. Southport Mill the courts have found that the accident arose out of the employment. However, we should not overlook the fact that in all these cases either the victim was actively at work immediately preceding the affray or he was otherwise securely within the course of his employment." Malone, Louisiana Workmen's Compensation, Sec. 194.
In Powell v. Gold Crown Stamp Company, Inc., 204 So.2d 61, at page 64, the Court said:
"Our review of decisions found in the jurisprudence of this state indicates that the majority of the appellate court decisions, including those of the Supreme Court, have followed the time, place and circumstance doctrine of the Kern case."
Plaintiff in the instant case was, in our opinion, well within the course of his employment when he was assaulted, and under the Kern rule he "should be protected against assault without reference to the nature of the difficulty that prompted the attack." Plaintiff's case meets the test of the Kern case in that (1) he was engaged about his employer's business and not merely pursuing his own business or pleasure and (2) the necessities of the employer's business reasonably required that the employee be at the place of the accident at the time the accident occurred.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by American Sugar Refining Company, defendant-appellant.
Affirmed.