STOULIG, Judge.
This is an appeal from a judgment granting plaintiff total permanent disability benefits under the Louisiana Workmen’s Compensation Statute but rejecting his claim for penalties and attorney’s fees.
Defendant seeks a reversal of the judgment contending that the lower court erred in finding that the injuries sustained “arose out of employment”; in failing to find that the claimant’s activities were clearly in violation of the regulations and instructions of his employer; and in concluding that the plaintiff was totally and permanently disabled. Plaintiff appealed, devolutively, from that portion of the judgment denying statutory penalties.
The undisputed evidence reflects that the defendant-employer is engaged in the truck rental business. In connection with the maintenance and servicing of its rental units, plaintiff was employed, some three weeks before the accident, as a washman, on the 3 to 11:30 p. m. shift.
Specifically, the duties of a washman were to refill the gas tank, check the oil and tires, and wash and park trucks. Occasionally he was required to change, but not repair, under-inflated tires.
By contractual agreement, Firestone Tire and Rubber Company assigned an employee to the defendant’s place of business for the sole purpose of changing and repairing tires. His tour of duty was from 6:30 a. m. to 6 :30 p. m., Monday through Friday, and until 1 p. m. on Saturday. This repairman was available only for the first three and one-half hours of plaintiff’s shift during the weekdays. However, the defendant maintained an inventory of 20 to 40 mounted truck tires, of various sizes for emergency use, when the need for an immediate replacement arose and the tire repairman was not present.
On August 29, 1969, an explosion occurred, and while plaintiff’s supervisor, Joseph R. McCubbin, and coworker, Sam Dale Keys, were investigating its cause they discovered him lying on the ground in an injured condition. There were no eyewitnesses to the accident.
Plaintiff maintains he was injured while repairing a truck tire of his employer. Defendant disputes this fact contending that plaintiff was actually engaged in repairing an automobile tire belonging to a janitor, which activity was contrary to company regulations, of which fact the plaintiff had previously been informed. Moreover, his action was in complete disregard of the warning given plaintiff by his supervisor, the preceding night, that he would be discharged if ever again caught violating this regulation. The plaintiff on that occasion had been observed placing a tire in a station wagon owned by the janitor.
Having satisfied the other requirements of the compensation statute, which are not an issue before us, the plaintiff, in order to qualify for compensation benefits, must now establish that his injuries resulted from an accident arising out of and in the course of his employment. LSA-R.S. 23:1031. Since it is admitted that Mr. Brown was injured in the course of his employment, the only issue left for determination is whether these injuries “arose out of his employment” with defendant.
Two well-accepted tests to determine if a claimant’s injuries arose out of his employment have been prescribed in the cases of Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256 (1917); and Kern v. *34 Southport Mill, 174 La. 432, 141 So. 19 (1932). The doctrines enunciated in these cases are commonly referred to as the “Myers Rule” and “Kern Rule,” respectively. They have been cited as decisive of this particular issue of fact in Powell v. Gold Crown Stamp Company, 204 So.2d 61 (La.App.2d Cir. 1967); Gorings v. Edwards, 222 So.2d 530 (La.App. 4th Cir. 1969); and Blade v. Mervis, 226 So.2d 552 (La.App. 4th Cir. 1969).
The Myers Rule concerns itself with the origin of the risk and not whether the cause of the injury was specifically identifiable with the character of employment. The Supreme Court stated the criteria as follows:
“* * * jj. ought; to be sufficient that the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment. * * *” 74 So. at 259.
The application of the Kern Rule involves a consideration of the time of the accident, the place of its occurrence, and the purpose for claimant’s presence at the scene. More specifically, the Supreme Court decreed in this case:
“In determining, therefore, whether an accident ‘arose out of’ the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer’s business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer’s business reasonably require that the employee be at the place of the accident at the time the accident occurred?” 141 So. at 21.
After reviewing the jurisprudence relative to the test of liability set forth in the Myers and Kern cases, it was noted in the Powell case:
“* * * Our review of decisions found in the jurisprudence of this state indicates that the majority of the appellate court decisions, including those of the Supreme Court, have followed the time, place and circumstance doctrine of the Kern case.” 204 So.2d at 64.
Reassured by the knowledge of its recognition by a majority of the Appellate Court decisions, this court will apply the test of the Kern doctrine, as it is more readily adaptable to the facts of the instant matter.
Although the compensation act is sui generis in nature, our settled law is that the plaintiff must establish his claim to a legal certainty and by a reasonable preponderance of evidence. Williams v. New Orleans Paper Box Company, 185 So.2d 109 (La.App. 4th Cir. 1966). Accordingly, the plaintiff bears the burden of proving that he has satisfactorily met the requirements of the Kern Rule in order to qualify for compensation benefits.
The liberality of statutory interpretation in favor of the employee cannot be offered to relieve claimant of the responsibility of proving that he was engaged about his employer’s business and that the necessities of his employment reasonably required his presence at the scene of the accident at the time of its occurrence and as a result of which he sustained disabling injuries.
Before reviewing the evidence submitted on this issue, we should bear in mind that the findings of fact of the lower court should not be disturbed unless there is manifest error. The trial judge is vested with much discretion in his determination of the facts, and his evaluation of the evidence and credibility of witnesses should be accorded great weight. The rationale of these concepts of appellate review are so well engrained in our jurisprudence that no useful purpose would be served by reiterating them.
However, as the Appellate Court we are charged with the obligation of reviewing both the law and the facts of the matters coming before us. LSA-Const. Art. 7, § 29; Barker v. Phoenix Insurance Compa *35 ny, 220 So.2d 720 (La.App.) writ refused, 254 La. 134, 222 So.2d 883 (1969); American Fidelity Fire Ins. Co. v. Southern Ry. Co., 180 So.2d 820 (La.App. 4th Cir. 1965). We cannot abdicate our responsibility of reviewing the evidence from which the trial judge has drawn his conclusions of fact under the guise of not disturbing his findings. We cannot accept his factual conclusions and adopt them as our own, unless we confirm that the evidence warrants such findings. To do otherwise would be tantamount to relinquishing part of our appellate functions.
Plaintiff presented himself and his wife, as the only witnesses, in support of the contention that he was engaged in repairing a truck tire and therefore about his employer’s business at the time he sustained his injuries.
An analysis of his testimony reflects it to be contradictory, speculative and equivocal. He testified that he did not remember anything after the accident but believed he was working on a truck tire (Tr. 112). He was repairing the tire at the request of his supervisor, Mr. McCubbin (Tr. 115). He testified that only on one occasion did he repair a tire for the janitor’s station wagon, for which task he was paid $1. The testimony shows he was told by Mr. McCubbin he could lose his job if he were caught doing this again (Tr. 118-19). Plaintiff admitted that he never saw any employee repair truck tires other than Al, the tire man for the night crew, and that his employer maintained an inventory of mounted and inflated tires (Tr. 124 — 25). Again on rebuttal, Mr. Brown unequivocally reaffirmed that only in one instance did he repair the janitor’s tire and that was the occasion when Mr. McCubbin had warned him (Tr. 204). In response to questions propounded by the court, the following testimony was elicited from the plaintiff:
"Q The night of the accident, were you working on a tire, do you remember?
A Judge, tell you the truth, I do not, cannot remember the accident, don’t remember nothing.
Q You can’t remember right now?
A I can’t remember nothing, I just don’t know nothing now.
BY THE COURT:
Q About the night of the injury?
A That’s right.
Q You don’t know if you were working on an automobile tire or truck tire or what?
A I know I was working on a tire, but what kind of tire I don’t remember, I believe about 700 by — I ain’t sure, not sure of the exact size of the tire.”
It is apparent that plaintiff has little or no recollection of what type of tire he was repairing.
The testimony of Mrs. Gloria Brown, plaintiff’s wife, that a truck tire was involved is purely hearsay, even if admissible as an admission against interest (which we do not decide). It is not based upon her personal observation but solely upon statements allegedly made, by the supervisor, McCubbin, which he emphatically denied making (Tr. 88, 144-45). Defendant’s employee Keys, who escorted plaintiff’s wife and mother to the hospital, did tell them that a “tire blew up on him” but did not state what kind of tire because he did not know what kind it was (Tr. 98, 99). Considered in its most favorable light, the testimony of Mrs. Brown must be characterized as secondary evidence, which fact restricts its probative value.
The defendant tendered the testimony of its supervisor, McCubbin, and its employees Keys and James Whitlock to contravene the plaintiff’s contention. All of these witnesses testified that it was against company regulations for any employee to repair a tire and that they were specifical *36 ly instructed to this effect at the time of their employment. Only certain employees were designated for this purpose. Plaintiff partially corroborated this by his admission that he never observed anyone repairing a tire except Al, the employee authorized to perform this function.
Also confirmed by the plaintiff was the fact that McCubbin, in the presence of Keys on the night preceding the .accident, did observe Brown rolling a tire toward, and placing it in, the station wagon belonging to the janitor. Though there is a slight variance as to the exact conversation between the parties, the text was to the effect that if the plaintiff was again caught repairing a tire, he would be discharged. At least in these respects, plaintiff substantiated the testimony of the defendant’s witnesses.
McCubbin denied that he ever requested or authorized the plaintiff to repair a tire. This statement has some persuasiveness, particularly since the defendant always maintained an inventory of mounted tires available for use in the event of an emergency, which fact plaintiff himself acknowledged in his testimony. Obviously, no need would exist for the supervisor to request plaintiff to repair a tire under these circumstances.
Both McCubbin and Keys stated that they first became aware of an accident by the sound of an explosion. When they investigated, they found Brown lying on the ground between a tire truck and another parked truck. There was a tire near him with the bottom half blown off the rim. McCubbin estimated its size to be 800 x 14, which could be a passenger vehicle tire. It was evident to him that it had been overinflated and had ruptured from the bottom up. He positively declared the tire did not belong to the defendant.
Keys, also on the scene, noted the same tire but could not state whether it was for a truck or passenger vehicle, or if its casing had been damaged.
Testifying on behalf of the defendant was the janitor, Lewis Grey, the only person who can be considered as a disinterested witness, all of the others having a personal interest in the outcome of the case.
Although Grey testified that he had made contact with the plaintiff only once, apparently he was confused, for, by his own testimony, he discussed the repairing of tires with Brown on two occasions, the night before and the day of the accident. This witness testified that when he went to the site of the accident he found his tire, located near a bloody area, and, as he termed it, “busted up.” He picked it up and put it in his station wagon.
Though he may have been confused as to the number of meetings with the plaintiff, Grey’s testimony relative to the finding of his tire in a damaged condition at the scene of the accident supports the defendant’s position that an automobile tire was involved and, therefore, Brown was not engaged in the furtherance of his employer’s business. This is further buttressed by the fact there is no evidence of any other tires in the immediate vicinity of the accident.
Plaintiff’s rebuttal testimony (Tr. 205) that he repaired the janitor’s tire only one time and it was on the occasion when Mr. McCubbin warned him about the loss of his job is also inaccurate. This incident occurred the night before the accident. The presence of the janitor’s damaged tire near his body, the following day, clearly establishes the fact that an attempt had been made to repair it, and the evidence reflects that the plaintiff was the only person engaged in repairing a tire at the time in this area.
It should also be noted that in his reasons for judgment the trial judge stated:
“* * * In assessing the facts as to the testimony, the Court feels there’s no clear cut conclusion that can be drawn surrounding the testimony of witness Grey, and of witness McCubbin and of *37 witness Sam Dale Keys, and of plaintiff himself. * * * ”
Again he observed in connection with the presence of Grey’s tire at the scene of the accident:
“* * * How it got there, the evidence is not clear, unfortunately, under the circumstances involved, the evidence is not clear as to whether or not Brown was working on Grey’s tire when the accident happened. * * * ”
From the aforegoing statements of the trial judgment, it must be assumed that the evidence presented by the plaintiff was not conclusive in establishing that, despite instructions to the contrary, he was repairing a truck tire which belonged to his employer. In other words, there was insufficient proof to constitute a preponderance of evidence sustaining the fact that Brown was engaged about his employer’s business even though the trial judge ultimately found to the contrary.
Thus, after carefully considering all of the evidence, we are of the opinion that the plaintiff has failed to bear the burden of proof necessary to establish by a preponderance of evidence that he has satisfactorily complied with the requirements of the Kern test, entitling him to workmen’s compensation benefits. If there is a preponderance of evidence it would favor the conclusion that the plaintiff, at the time of the accident and resulting injury, was repairing Lewis’ automobile tire and was actively engaged in the pursuit of his own individual business to earn “lunch” money.
Appellant’s alternative contention, that plaintiff violated the rules and regulations of his employment by repairing a tire and therefore is barred from recovery under LSA-R.S. 23:1081, is without merit. In his treatise on Workmen’s Compensation, Professor Wex Malone states with regard to the effect of violation of company regulations:
“* * * [A]n employee is not placed outside the course of his employment by reason of the fact that he was acting contrary to orders unless the violation either caused him to be at an unauthorized place or substantially altered the nature of his activities. The mere fact that the worker has departed from the authorized manner of discharging his work or that he is not obeying instructions formulated for his own safety does not mean that he is outside the course of his employment. * * * ” Malone La. Work. Comp. § 166.
This view is confirmed by the case of Sears v. Peytral, 151 La. 971, 92 So. 561 (1922), in which the Supreme Court held that the fact than an employee was acting contrary to instructions did not, per se, place him out of the scope of his employment. In the course of its opinion, the Court quoted at page 562 from the annotation on workman’s compensation laws found in L.R.A.1916A, on page 52 et seq., wherein it is stated that:
“ ‘The essential point to be determined is whether the servant was actually doing the work he was employed to do, or whether he was doing something substantially different. In the former case numerous decisions support the view that mere disobedience to orders does not take him outside the statute. * * *
“ ‘Where, however, the prohibited act is one lying wholly outside of the sphere of his employment, no recovery is allowable. * * > ’>
In view of our finding that the plaintiff is not entitled to compensation benefits, no need exists to pass upon the totality or permanency of his disability.
For the aforegoing reasons, the judgment of the lower court in favor of the plaintiff, Joseph Robert Brown, and against the defendants, The Hertz Corporation and Royal Indemnity Company, awarding workmen’s compensation benefits *38 of $35 per week for 400 weeks, commencing September 5, 1968, with interest at the rate of five (5%) percent per annum on each past due installment together with maximum medical benefits of $2,500 is reversed and judgment rendered in favor of the defendants-appellants, The Hertz Corporation and Royal Indemnity Company, and against the plaintiff-appellee, Joseph Robert Brown, rejecting his demand. All costs of these proceedings are to, b.e.borne by plaintiff-appellee.
Reversed and rendered.