McCALEB, Justice.
 

 This is a suit for recovery of workmen’s compensation under R.-S. 23:1021, et seq. Mrs. Carter, the injured employee, was ■hired on May
 
 7,
 
 1964 by the defendants (husband and wife) who own a corner grocery and sandwich shop, to replace temporarily their sandwich maker and waitress at the lunch counter operated in the store. In the course of this work Mrs. Carter was required to operate an electrically powered meat-slicing machine. For her services she was paid $4.00, for the work day which began at 9:00 a. m. and ended at 2:30 in the afternoon-. On the day Mrs. Carter worked (there is some dispute as to whether or not her employ'ment was for just one day or for a longer period) she was paid $4.00 by Mrs. Lanzetta
 
 *1101
 
 at 2:30 p. m., the end of the work day, and she was either given or purchased a piece of pie at the counter. Thereafter, she remained in the store chatting with Mrs. Lanzetta for approximately 20 or 30 minutes. On leaving the store at about 3:00 p. m. Mrs. Carter lost her footing on the cement step adjoining the front door, fell to the sidewalk and sustained a fracture of two ribs and a fracture of the ocalsis of the left foot extending into the sub-talar joint.
 

 Plaintiffs (the employee and her husband) claim that, as a result of the injury to her left foot, Mrs. Carter continues to experience substantial pain upon walking and standing and that she is totally and permanently disabled to do sales work, the only work for which she is suited by training and experience. Hence compensation at the rate of $10.00
 
 [1]
 
 per week for 400 weeks is claimed together with legal interest, medical expenses, statutory penalties and attorney’s fees.
 

 Defendants originally asserted in their answer that Mrs. Carter’s injuries were not sustained on the premises and that her employment was not of a hazardous nature. However, these contentions are no longer pressed and have apparently been abandoned. Actually, the sole defense to the case is that, since Mrs. Carter was hired for one day only, her employment' was terminated completely as soon as she was paid for her services and, in any event she was not injured in the course of her employment as she unnecessarily remained in the store for 20 to 30 minutes talking to Mrs. Lanzetta before leaving the premises.
 

 The trial judge dismissed the suit concluding that the accident did not ¿rise out of and in the course of the employment since Mrs. Carter had completed her work, had been paid her wages and thereafter tarried on the premises for 20 to 30 minutes discussing various topics with Mrs. Lanzetta.
 

 On appeal, the Court of Appeal, Fourth Circuit, affirmed. See Carter v. Lanzetta, 185 So.2d 331. That court was of the opinion that, when Mrs. Carter was paid for her day’s work at 2:30 p. m., “ * * * it not only terminated the working day but also the employer-employee relationship, since the employment was only for that one day.” In addition the court further reasoned that, because Mrs. Carter thereafter remained on the premises for one-half hour to chat and socialize with her employer before she fell and ’was injured while descending the step on the way to the sidewalk, “ * * * she
 
 *1103
 
 was not injured in the course of her employment.”
 
 [2]
 

 Plaintiffs applied for certiorari contending that, forasmuch as Mrs. Carter was injured on the premises while in the act of departing therefrom, she was within the course of her 'employment and that the holding to the contrary by the Court of Appeal, Fourth Circuit, is in direct conflict with that of the Court of Appeal, Third Circuit, in Simmons v. Liberty Mutual Insurance Company, 185 So.2d 822. The application was granted and the matter has been submitted for our determination.
 

 We think the ruling of the trial court and the Court of Appeal are clearly wrong. Initially, it is apt to observe that it has long been well settled, not only here but in practically all states which have enacted Workmen’s Compensation statutes, that such statutes envision extension of coverage to employees from the time they reach the employer’s premises until they depart therefrom and that hours of service include a period when this might be accomplished within a reasonable interval. The rule is well stated in Malone, Workmen’s Compensation Law and Practice, Section 169, p. 193, as follows:
 

 “The observation has been made in previous sections that an employee is acting in the course of his employment while he is actually engaged in his employer’s work even before or after working hours. Furthermore, even if he is finished the day’s work and is preparing to leave, or is in the act of leaving, he in entitled to a reasonable period while still on the premises which is regarded as within the course of the employment.
 
 The working day embraces these intervals
 
 just as it includes reasonable periods for rest, relaxation or the attendance of personal needs. This applies also to periods prior to the actual beginning of work under similar circumstances.” (Emphasis ours).
 
 [3]
 

 
 *1105
 
 Thus, it matters not that Mrs. Carter was to work for just one day, as the Court of Appeal found, inasmuch as the brevity of the hiring affords no basis for the court’s ruling that liability under the Workmen’s Compensation law terminated at the moment the employee received payment for her services. Even a casual employee engaged in a hazardous occupation is covered under the act (see Malone, Louisiana Workmen’s Compensation Law and Practice, Sec. 55, p. 57; Powell v. Travelers Insurance Company, 117 So.2d 610 (La.App.1960) regardless of the short duration of his employment and is entitled to safe ingress and egress to and from the employer’s premises to the same extent as the regular employee.
 

 Nor do we think that Mrs. Carter became a loiterer on the premises because she remained thereon for 20 or 30 minutes after she had been paid and engaged in conversation pertaining to religion with her employer, Mrs. Lanzetta. Indeed, we see no undue prolongation of her exit from the premises under the circumstances of the case.
 
 [4]
 
 Certainly there is nothing in the record to indicate that the delay of 20 to 30 minutes increased the hazard of the employment or enlarged Mrs. Carter’s exposure to danger. See Blattner v. Loyal Order of Moose, etc., 264 Minn. 79, 117 N.W.2d 570. Besides, consideration must be given to the fact that Mrs. Carter- was engaged in conversation with her employer and, whether the conversation pertained to social matters or otherwise, we think it manifest that the employee under such conditions is not in a position to hastily withdraw. See Dobson v. Standard Accident
 
 *1107
 
 Insurance Co., 228 La. 837, 84 So.2d 210 and Brown v. Hartford Accident & Indemnity Co., 240 La. 1051, 126 So.2d 768.
 

 ' We conclude that the accident occurred during the course of the employment.
 
 [5]
 
 As indicated in the beginning, the fact that defendants’ business contained hazardous features, an electrically powered slicing machine to which plaintiff was exposed, is sufficient to bring the case within our Workmen’s Compensation Act. Hence, the only remaining matter for consideration is the nature of plaintiff’s injuries and the duration of her disability.
 

 I Plaintiffs assert that Mrs. Carter can no longer perform work requiring periods of standing, walking or heavy lifting and that, since she is fitted by training and experience for sales work only, she is totally and permanently disabled to perform work of a reasonable character within the meaning of the Workmen’s Compensation law. In support of this position, reliance is placed on Mrs. Carter’s testimony and the medical opinion of her treating physician, Dr. Ray J. Haddad, Jr., an orthopedist practicing in the city of New Orleans. ■
 

 Mrs. Carter avouched that, since sustaining her injuries, she has been in pain all of the time, particularly so when standing or walking. On the day of the accident she was taken to Baptist Hospital' Where she was examined by Dr. Haddad. By X-Rays, it was ascertained that Mrs. Carter sustained a fracture of the sixth and seventh ribs on the left side and a fracture involving the left ocalsis of the foot. The fracture of the foot, according to Dr. Haddad, was a “minimally displaced fracture” involving the ocalsis,
 
 [6]
 
 which extended into the sub-talar joint and that, on the day of the accident, a splint was placed on her foot. Later the foot was enclosed in a cast for approximately three weeks and, on its removal in June, it was found that the heel bone had improved to the extent that Mrs. Carter was able to walk on crutches. Dr. Haddad testified that by the month of October the X-Rays showed good healing of the fracture site. However, he stated that Mrs. Carter continued to-complain, of pain and that .sustained pain is common in fractures of this type. The condition'as to pain remained the same when Mrs. Carter was examined on January 8, 1965 and he declared that this condition has persisted. On June 18, 1965 Dr. Haddad made a report to a Mr. Landry for the Vocational Rehabilitation Center in which he stated Mrs. Carter previously worked as a clerk in a grocery store and that, since her injury, she was unable to return to that' type of occupation. His conclusion was that she
 
 *1109
 
 could work provided she was not required to do prolonged walking, standing or heavy lifting.
 

 Dr. Haddad further testified that Mrs. Carter has developed sub-talar degenerative arthritis as a result of the fracture and in the future, if she continued to be markedly disabled with the difficulty, surgery (fusion of the joint) might be necessary. It was his opinion that a waiting period of two years was essential to determine if there is any improvement.
 

 Besides her statement that she is in constant pain when she stands, Mrs. Carter testified that, previous to the accident, she had performed sales work at Long’s Bakery and Woolworth’s Store on Canal Street; that she obtained a job at Good Will Industries shortly before the trial of the case; that she worked only five days and that she had to quit because of the pain and swelling of her foot.
 

 The defendants produced no evidence whatever to refute the testimony of Mrs. Carter and the opinion of Dr. Haddad. In these circumstances, it seems patent that Mrs. Carter was totally and permanently disabled at the date of the trial.
 

 Plaintiffs’ claim for medical expenses in the amount of $283.24 is sustained by the evidence.- The demand for statutory penalties and attorney’s fees, however, has not been stressed during argument either here or in the Court -of Appeal. Under these conditions we regard the claim abandoned.
 

 For the reasons assigned, the judgment of the' district court and the Court of Appeal is reversed and it is now ordered that there be judgment herein in favor, of plaintiff, Mrs. Juanita West, wife of- Carl B. Carter, and. against defendants, Josic Lanzetta and Camello Lanzetta, for workmen’s compensation at the rate of $10.00 per week beginning-on.May 14, 1964 and extending for a period not to exceed 400 weeks with legal interest on each past due weekly payment from its due date until paid.
 

 It is further ordered that there be judgment herein in favor of Carl B. Carter and against the defendants for medical' expenses in the sum of $283.24; the right to demand future medical expenses up to the prescribed maximum of $2500.00 is reserved to Carl B. Carter. All costs are to be paid by defendants.
 

 HAMITER, J., dissents, being of the opinion that the judgment of the Court of Appeal is correct.
 

 [1]
 

 . In this Court plaintiffs seek $15.60 per week hut the petition filed by them claims only $10.00 per week. . , .
 

 [2]
 

 . In rapport of this conclusion, the court cites Gathright v. Liberty Mutual Insurance Co. (La.App.) 157 So.2d 242; Hay v. Travelers Insurance Co. (La.App.) 106 So.2d 791 and Peterson v. Williams (La.App.) 175 So.2d 364.
 

 We find none of these cases pertinent. In the Gathright matter the employee had left work at 4:00 p. m. and was injured later away from the employer’s premises while engaged in purely personal business. In the Hay case the employee was injured while riding to work in an automobile owned and operated by a fellow-employee. In denying compensation the court properly applied the general rule (which is subject to many qualifications and exceptions) that injuries sustained by an employee off the premises while going to or from work are not compensable. In the Peterson case the employee was injured during an altercation with Ms employer on Saturday, a non-work day. It was held that this accident did not occur during the course of his employment.
 

 [3]
 

 . See also Baker v. Texas Pipe Line Company, 5 La.App. 25; Rogers v. Mengel Co., 189 La. 723, 180 So. 499; Garic v. Garic, 14 La.App. 585, 130 So. 563; Favre v. Werk Press Cloth Mfg. Co., Inc. (La.App.) 152 So. 694; Osborne v. McWilliams Dredging Company, 189 La. 670, 180 So. 481 and Simmons v. Lib
 
 *1105
 
 erty Mutual Insurance Company (La.App.) 185 So.2d 822. Indeed, it is well settled that, under exceptional circumstances, a continuance of the course of employment may be extended by allowing the employee a reasonable time not only to enter or leave the premises but also to surmount certain hazards adjacent thereto. See discussion in Walker v. Lykes Brothers-Ripley S.S. Co. (La.App.) 166 So. 624, citing Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532 and Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, 06 A.L.R. 1402.
 

 [4]
 

 . In this respect, the opinion of the Court of Appeal is in direct conflict with that of the Court of Appeal, Third Circuit, in Simmons v. Liberty Mutual Insurance Company, 185 So.2d 822, decided on April 27, 1966. In the Simmons case a part-time department store sales clerk, who finished work at 1:00 p. m. and returned to the store at 4:30 p. m. to pick up her pay check on the third floor, was injured in a fall while leaving the store at 5:00 p. m. The defense was that she was not in the course of her employment at the time of her injury because she had remained on the premises from about 4:30 p. m., when she picked up her pay chock, to attend to purely personal business, i. o., the purchasing of a “bra” and a “piece of goods”. The Court of Appeal, Third Circuit, rejected this defense being of the opinion that the time taken to make personal purchases before leaving the premises was not unreasonable under the well established jurisprudence citing, among other authorities, Malone, Louisiana Workmen’s Compensation Law and Practice, Section 169.
 

 [5]
 

 . This case is similar in principle to Bates v. Gulf States Utilities Company, 249 La. 1087, 193 So.2d 255, this day decided.
 

 [6]
 

 : Ocalsis is the heel bone which is mainly . weight bearing.'