225 So.2d 391 (1969)
John MATTHEWS, Plaintiff-Appellant,
v.
MILWHITE MUD SALES CO. et al. Defendant-Appellee.
No. 2667.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1969.
Rehearing Denied June 18, 1969.
On Rehearing August 7, 1969.
Writ Refused October 1, 1969.
Further Rehearing Denied October 17, 1969.
*392 Anatole J. Plaisance, Mouton, Beard, Plaisance & Franques and Sidney P. Landry, Lafayette, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe, by J. J. Davidson, III, Lafayette, for defendant-appellee.
Before TATE, SAVOY and HOOD, JJ.
*393 HOOD, Judge.
This is a workmen's compensation suit instituted by John Matthews against Milchem, Inc. (referred to in the petition and in this opinion as Milwhite Mud Sales Company) and its insurer, Fidelity & Casualty Company of New York (erroneously referred to in the petition as Fidelity & Casualty Company). Plaintiff contends that he sustained an injury while working for defendant Milwhite, and that as a result of that injury he is totally and permanently disabled. The trial judge concluded that plaintiff's employment had been terminated before his alleged injury was sustained. Judgment on the merits thus was rendered in favor of defendants. Plaintiff has appealed.
A factual issue is presented as to whether an accident occurred, as alleged. If we find that such an accident did occur, then a further issue is presented as to whether plaintiff was fired by his employer prior to the time of that accident. If we determine that there was an accident and that plaintiff was discharged prior to the time it occurred, then a legal question is presented as to whether the employer-employee relationship between Milwhite and plaintiff continued to exist, as a matter of law, up to and including the time the injuries were sustained.
The accident allegedly occurred on June 11, 1964, while plaintiff was working as a swamper or laborer for Milwhite. The duties of plaintiff's employment required him to do some heavy lifting and at times to drive a truck. Matthews had worked for Milwhite for approximately 23 years, and he had performed his work satisfactorily prior to the date of the alleged accident.
Plaintiff reported for work at Milwhite's place of business at New Iberia, La., about 7:00 a. m. on the date the accident occurred. Three or four hours later he was dispatched to deliver 200 bags of salt by truck to a location near Lottie, Louisiana. Each bag of salt weighed about 100 pounds. Plaintiff proceeded to make this delivery, and when he arrived at his destination he began to unload the truck. Shortly thereafter he was joined by another employee, Sylvester Fontenette, who assisted him in unloading the remaining bags of salt. Plaintiff contends that while he and Fontenette were unloading the truck, three or four sacks of salt fell on him, with the result that his back was injured and he has been totally and permanently disabled.
No one was present when the sacks fell except plaintiff and Fontenette. The latter had his back turned to plaintiff at that time, so he did not actually see them fall. When he turned around, however, he saw that three sacks of salt had fallen from the truck to the ground at about the place where plaintiff had been standing, and that plaintiff was "stooping down." Plaintiff informed Fontenette immediately that the sacks had fallen on him and that he had been injured as a result of that accident. Plaintiff was examined by a doctor the next day, and that examination revealed that he had sustained a back injury. This evidence, we think, establishes that an accident did occur as alleged by plaintiff.
Milwhite's foreman, Marx Louviere, was present while plaintiff and Fontenette were unloading the truck. As these unloading operations were being conducted, and again while the truck was being reloaded with other materials the same afternoon, Matthews and the foreman became engaged in conversations with each other. They obviously had a disagreement, and the evidence shows that sometime during the afternoon Louviere informed plaintiff that the latter was fired. Matthews and Louviere, however, give different accounts as to what was said in these conversations, and they disagree particularly as to whether plaintiff was fired before or after the accident occurred.
Plaintiff testified that he was fired after the accident occurred and after he had reported his injury to Louviere. He stated that immediately after he informed Louviere of the accident, the latter left the *394 scene for the purpose of obtaining another employee to relieve plaintiff, and that Louviere did not tell plaintiff that he was fired until after he returned to the scene with this additional employee.
Louviere, on the other hand, testified that shortly after the unloading operations were begun, and in response to some additional instructions he had given to plaintiff, the latter informed Louviere that he was tired, that he hadn't eaten and that he was not going to work anymore. The foreman stated that he thereupon told plaintiff to get off the truck and that he was fired. He then left the scene for the purpose of getting another employee to replace Matthews, and upon returning with another employee he stated that he again told plaintiff that he had been fired. He testified that plaintiff did not report an accident to him at any time, and that he saw no accident occur before he discharged plaintiff. The testimony of Fontenette, who overheard only a part of the conversations between Louviere and Matthews, tends to support the testimony of the foreman.
The trial judge accepted the testimony of Louviere as to what transpired at that time, and he concluded that the foreman actually told plaintiff that he was fired before the accident occurred.
The trial judge's findings of fact, particularly those involving the credibility of witnesses testifying before him, are entitled to great weight, and his conclusions as to the facts will not be disturbed unless found to be clearly erroneous. Gulf Machine Shop v. Poynter, 192 So.2d 606 (La.App.3d Cir. 1966).
In the instant suit we cannot say that the trial judge erred in accepting Louviere's testimony as to what transpired between him and plaintiff at that time, and in concluding that the foreman informed plaintiff that he was fired before the accident occurred.
Plaintiff contends, however, that even though the foreman did fire him before the accident occurred, his employment was not terminated until he was returned to the employer's place of business in New Iberia, and that the employer-employee relationship thus still existed at the time the accident occurred.
The evidence shows that when plaintiff reported for work on the morning of June 11, 1964, he "punched in" on a time clock at the office of the employer in New Iberia. Later that day, and pursuant to instructions from his employer, he drove a company-owned truck from New Iberia to the job site near Lottie, a distance of from 50 to 70 miles. He was fired by Louviere sometime during that afternoon, but he nevertheless continued to work in unloading the truck and in reloading it. At about 5:00 p. m. that day, he boarded the same truck, with another employee driving, and began the trip back to New Iberia. The truck arrived at the employer's office in New Iberia between 8:30 and 9:00 o'clock that evening, and plaintiff thereupon "punched out" on the time clock, reported his injury to a representative of the company and returned to his home. His pay check for that day was computed on the basis that he had worked from the time he punched in until he punched out on the time clock.
According to the proof, it was customary for the employees of Milwhite to punch a time clock when they reported for work, and to punch it again when they came in after completing their work. It also was customary for employees to be transported in company-owned vehicles from the principal office of the employer to the various job sites, and to be returned to the employer's office when the job was completed in the same vehicles. The evidence shows that in the instant suit plaintiff had no means of transportation from Lottie back to the company office in New Iberia, except by riding in the company-owned truck.
The particular facts and circumstances of each case must be considered in determining when the employment begins and when it ends. Danielsen v. Security Van *395 Lines, Inc., 245 La. 450, 158 So.2d 609 (1963).
Of some relevance here, we think, is the rule that when an employee is furnished transportation by his employer as an incident to his employment, and he is injured while going to or returning from work, the injury is said to arise out of and in the course of his employment. Vincent v. Service Contracting, Inc., 108 So.2d 281 (La.App.Orl.Cir.1959); Babineaux v. Giblin, 37 So.2d 877 (La.App. 1st Cir. 1948). Thus under those circumstances the employee may be said to be in the course of his employment, as a matter of law, from the time of his departure until the time of his return to the point of origin. In the instant suit plaintiff was furnished transportation by his employer from New Iberia to Lottie and then back to New Iberia. The accident occurred before he had been returned to the point of origin.
The general rule has been stated, correctly we think, in Malone, Workmen's Compensation Law and Practice, Section 169, as follows:
"The observation has been made in previous sections that an employee is acting in the course of his employment while he is actually engaged in his employer's work even before or after working hours. Furthermore, even if he has finished the day's work and is preparing to leave, or is in the act of leaving, he is entitled to a reasonable period while still on the premises which is regarded as within the course of the employment. The working day embraces these intervals just as it includes reasonable periods for rest, relaxation or the attendance of personal needs. This applies also to periods prior to the actual beginning of work under similar circumstances."
In Carter v. Lanzetta, 249 La. 1098, 193 So.2d 259 (1966), the plaintiff completed her day's work at 2:30 p. m. She remained on the premises for approximately 20 or 30 minutes thereafter, during which time she ate a piece of pie and visited with her employer. On leaving the store at about 3:00 p. m. she slipped and fell, sustaining injuries. Our Supreme Court, quoting with approval the above excerpt from Malone, held that there was "no undue prolongation of her exit from the premises," and that the accident thus occurred during the course of the employment.
The rule with reference to employees who have been discharged is stated in Corpus Juris Secundum, as follows:
"When employee quits or is discharged, he must be given a reasonable time to leave the premises before the relation of master and servant is so completely severed as to make the compensation act inapplicable; and the relation is not terminated where a discharged employee remains on, or returns to, the premises to receive his pay or to complete his work * * *." 99 C.J.S. Workmen's Compensation § 63, p. 268.
And, in Larson's Workmen's Compensation Law, Section 26.10, the author observes, correctly we think, that:
"Compensation coverage is not automatically and instantaneously terminated by the firing or quitting of the employee. He is deemed to be within the course of employment for a reasonable period while he winds up his affairs and leaves the premises. The only difficult question is: what is a reasonable period?"
* * * * * *
"When the employee is a traveling man, or any worker whose duties include a journey to some distant point in the course of which he is considered within his employment, such an employee, fired in the midst of his journey, remains within the course of employment as he makes his way back to his starting-point."
In the instant suit Matthews had been transported to the job site by his employer, and he had no means of being transported back to the point of origin in New Iberia, other than by riding in the employer's *396 truck. It was necessary for him to wait at the job site until the work for that day had been completed and the truck was ready to return to New Iberia. We conclude that there was no undue or unreasonable delay on plaintiff's part in vacating the premises, and that the accident thus occurred during the course of his employment. The judgment of the trial court must be reversed, therefore, insofar as it decrees that the employment was terminated before the accident occurred.
Matthews was about 50 years of age when the accident occurred. He had had no trouble with his back prior to the date of that accident. He consulted his family physician, Dr. D. E. Bourgeois, a general practitioner, on June 12, 1964, the day after he injured his back, and he was treated by that doctor for a period of about one year thereafter, until June 9, 1965. Dr. Bourgeois diagnosed plaintiff's injury as a "strain of the latissimus dorsi muscle, left." He concluded, however, that plaintiff had recovered by July 31, 1964, that he could return to his employment on that date, and that thereafter he could perform heavy manual labor without substantial pain. He explained that he continued to administer diathermy treatments to plaintiff after July 31, 1964, only because another doctor had recommended that those treatments be given.
Plaintiff was treated by Dr. Michael E. Boustany, a general practitioner, from August 28, 1964, until January 6, 1965. Dr. Boustany concluded that plaintiff had sustained an actue sprain of the lumbo-sacral region, and he felt that plaintiff was disabled from performing heavy manual labor as of the last date he saw him, January 6, 1965. He made no prognosis as to when plaintiff would recover.
Dr. John A. Colclough, a neurosurgeon, examined Matthews on February 1, 1965. He found no neurological disorder, but he concluded that plaintiff had "organic pathology of an orthopedic nature in his lower back." He felt that the accident could have aggravated the pre-existing condition of plaintiff's low back, and that his condition was such that he could not lift 100 pound sacks without pain. He stated, however, that "with proper orthopedic treatment his disability should have lasted perhaps six months to one year from the date of the injury." It is obvious from Dr. Colclough's testimony that he considered plaintiff's disability to be of a temporary nature, and that he felt that plaintiff should have recovered at least within one year of the accident, or by June, 1965.
Dr. William Louis Meuleman, an orthopedic surgeon, examined Matthews on June 28, 1965, and found no objective signs of injury and no "measurable indication of disability." He testified that in his opinion plaintiff was able to return to his regular work, performing heavy labor, at the time of that examination.
Plaintiff sought no further medical examination or treatment until more than 15 months after he was examined by Dr. Meuleman. He was examined by Dr. Homer D. Kirgis, a neurosurgeon, on October 7, 1966, and again on March 14, 1967. And, he was examined by Dr. J. Boring Montgomery, a general practitioner, on four or five occasions, beginning on November 21, 1966, and ending on March 13, 1967.
Dr. Kirgis testified that on his initial examination he found moderate spasm of the para-spinous muscles, and "a spur at the anterior superior border of L-5, but there is no inter-space narrowing or other abnormality of calcification in the abdominal aorta." He felt that plaintiff's complaints were out of proportion to his findings, but largely in view of these complaints he concluded that plaintiff was disabled at the time of the first examination. On the second examination, he found only slight, if any, muscle spasms, and he felt that plaintiff had improved considerably and "was capable of performing at least light work." In his opinion plaintiff's disability was of a temporary nature, and he thought that the "prognosis was good."
*397 Dr. Montgomery concluded that plaintiff had sustained a severe injury to his lower back, and that the presence of an osteoarthritic process in the lumbo-sacral spine had acted to delay the recovery. He felt that the injury was to the muscles of the left shoulder and lower back, and he could find no disc injury. He arrived at the conclusion, however, that plaintiff was totally and permanently disabled from performing heavy manual labor, and that the accident could have caused the disability.
We have reviewed the medical evidence carefully, and have considered it in connection with plaintiff's testimony and the other lay evidence which was presented relating to Matthews' injury and alleged disability. We note that Dr. Kirgis based his conclusions almost entirely on the history which was given to him by plaintiff, although he stated that plaintiff's complaints "were out of proportion" to his findings, that they "might cause one to wonder whether he was unduly apprehensive about his back andmight be attempting to exploit the injury in some way," and that plaintiff "seemed to experience more discomfort than he would anticipate." Dr. Kirgis also testified that he would have "considerable confidence in the local physician's opinion with regard to this case" and that he would "place considerable value in the local physician's evaluation" of plaintiff's complaints.
The opinion expressed by Dr. Montgomery, who was not a specialist and who examined plaintiff long after the accident occurred, is in conflict with the opinions expressed by the original treating physicians, and by the specialists who previously had examined plaintiff. We believe that the opinions expressed by the specialists in the fields of orthopedics and neurosurgery as to the nature and extent of plaintiff's disability are entitled to greater weight than those expressed by this general practitioner. Ashby v. National Surety Corp., 203 So. 2d 96 (La.App. 2 Cir. 1967).
For these reasons, we accept the testimony of the treating physicians, and of Doctors Colclough and Meuleman as to the extent of plaintiff's disability. Our conclusion is that plaintiff was disabled from performing the duties of his employment from the date of the accident, June 11, 1964, until June 28, 1965, the last date being the one on which Dr. Meuleman found that Matthews was able to return to work. Plaintiff thus is entitled to workmen's compensation benefits at the rate of $35.00 per week for that period of time.
Although plaintiff claims penalties and attorneys fees, the evidence fails to show that defendants were arbitrary, capricious or without probable cause in refusing to make compensation payments to him. A serious issue was presented as to whether plaintiff's employment had been terminated before he was injured, or as to whether an employee-employer relationship existed. Because of those questions, defendants were justified in withholding compensation benefits.
For the reasons herein set out, the judgment appealed from is reversed. Judgment is hereby rendered in favor of plaintiff, John Matthews, and against defendants, Milchem, Inc., and Fidelity and Casualty Company of New York, jointly and in solido, condemning said defendants to pay to plaintiff the sum of $35.00 per week for the period beginning on June 11, 1964, and ending on June 28, 1965, together with interest at the rate of 5 percent per annum on each weekly payment from the date such payment became due until paid, and all costs of this suit. The costs of this appeal are assessed to defendants-appellees.
Reversed and rendered.

ON REHEARING
En Banc.
HOOD, Judge.
Although plaintiff's petition contains a general prayer for reimbursement of medical expenses, we did not understand that a claim for those expenses was being *398 made when the case was before us originally. In his application for rehearing, however, plaintiff alleges that we erred: (1) In failing to award him the medical expenses which he incurred (2) in failing to fix the expert fees of the physicians who testified (3) in failing to fix the costs of taking depositions and (4) in failing to tax the expert fees and expenses of taking depositions as court costs. We granted a rehearing in order that we could consider those parts of his claim.
After the rehearing was granted, the parties stipulated that if any medical expenses are due, then the amount to be awarded should be as follows:

 "Dr. J. A. Colclough $ 50.00
 Dr. Eldridge Bourgeois 549.50
 Dr. Michael Boustany 125.00
 Dr. Homer Kirgis 95.00
 Dr. J. Boring Montgomery 87.00
 Taylor's Drug Store 37.85
 _______
 $944.35"

They also stipulated as to the amounts which should be fixed and allowed as "Expert Fees for Giving Depositions," amounting to a total of $275.00, and the amounts which should be allowed as "Court Reporters' Fees for Taking Depositions," that being the aggregate sum of $245.00.

Medical Expenses, Fees and Costs
We have concluded that plaintiff is entitled to recover from defendants the expenses which were incurred by him as medical expenses. Pursuant to the stipulation which was entered into by the parties, therefore, our original decree will be amended to include an award for the additional sum of $944.35.
Plaintiff also is entitled to have the expert fees of the physicians who testified by deposition, and whose depositions were used in the trial, fixed by the court and to have those fees taxed as costs. The expenses incurred in taking these depositions will be fixed at the amounts shown in the stipulation and taxed as costs.

Motion to Remand
After the rehearing was granted in this case, plaintiff filed a "Motion to Remand for Taking Additional Medical Evidence." In that motion he alleges that after the case was tried in the district court, but before it was decided, plaintiff was found to be totally disabled by the Social Security Administration of the United States Department of Health, Education and Welfare. He attaches to that motion a copy of the "Hearing Examiner's Decision," which indicates on its face that the Hearing Examiner found plaintiff to be totally disabled. Plaintiff contends that the case should be remanded to take the testimony of the medical experts who appeared before the Hearing Examiner.
Despite the merit which this motion to remand may have had if timely filed, we hold that it now comes too late. The judgment which we rendered originally on appeal has become final, insofar as this court is concerned, except as to the limited purposes for which this rehearing was granted. The rehearing was not granted to reconsider the extent of plaintiff's disability, and thus we cannot consider plaintiff's request that the case be remanded to take additional evidence as to that issue.
We conclude that the motion to remand was not timely filed, and the motion thus is denied.

Decree
For the reasons herein assigned, our original judgment is amended and restated to read:
"IT IS ORDERED, ADJUDGED and DECREED that judgment be rendered in favor of plaintiff, John Matthews, and against defendants, Milchem, Inc., and Fidelity and Casualty Company of New York, jointly and in solido, condemning said defendants to pay to plaintiff: (1) The sum of $35.00 per week for the period beginning on June 11, 1964, *399 and ending on June 28, 1965, with interest thereon at the rate of five percent per annum on each weekly payment from the date such payment became due until paid; and (2) the sum of $944.35, with interest thereon at the rate of five percent per annum from date of judicial demand, until paid, and all costs of this suit.
"IT IS FURTHER ORDERED, ADJUDGED and DECREED that the following amounts be fixed and allowed as expert fees for giving depositions and as Court Reporters' fees for taking those depositions:
`Expert fees for Giving Depositions

 Dr. J. Boring Montgomery $ 50.00
 Dr. Michael E. Boustany 50.00
 Dr. J. A. Colclough 75.00
 Dr. Homer Kirgis 100.00
 _______
 $275.00

`Court Reporters' Fees for Taking Depositions

 Associated Court Reporters
 (for depositions of Dr. J. A.
 Colclough) $ 55.30
 Associated Court Reporters, Inc.
 (for depositions of Dr. J. B.
 Montgomery) 34.10
 Associated Court Reporters, Inc.
 (for depositions of Dr.
 Michael Boustany) 45.45
 Associated Reporters (for deposition
 of Dr. Homer Kirgis) 110.20
 _______
 $245.05'

"These fees and costs of taking depositions are assessed as costs in this suit."
The costs of this appeal are assessed to defendants-appellants. The right is reserved to all parties to apply for rehearing from this judgment.
Original decree amended.