# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 18-760


**LADESSA CAROL LEBLANC**

**VERSUS**

**LOUISIANA DEPARTMENT OF EDUCATION**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF VERMILION, NO. 16-03594
ADAM C. JOHNSON, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN E. CONERY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and John E. Conery, Judges.


**REVERSED AND REMANDED.**

**Matthew Douglas McConnell**
**McConnell Law Offices**
**1021 Coolidge Boulevard**
**Lafayette, Louisiana 70503**
**(337) 347-6404**
**COUNSEL FOR CLAIMANT/APPELLANT:**
     **Ladessa Carol LeBlanc**

**Sylvia M. Fordice**
**Assistant Attorney General**
**Louisiana Department of Justice,**
**Division of Risk Management**
**556 Jefferson Street, 4th Floor**
**Lafayette, Louisiana 70501**
**(337) 262-1700**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Louisiana Department of Education**

**CONERY, Judge.**

The claimant, Ladessa Carol LeBlanc, appeals the ruling of the Workers' Compensation Judge (WCJ) dismissing her Disputed Claim For Compensation (Form 1008) on the basis that she was not within the course and scope of her employment with the Louisiana Department of Education (DOE). After her termination from the DOE on November 22, 2015, she claims to have sustained on-the-job injuries while returning her files and equipment at the DOE's request on February 3, 2016. For the following reasons, we reverse.

<h2 style="text-align:center">FACTS AND PROCEDURAL HISTORY</h2>

The State of Louisiana employed Mrs. LeBlanc for eighteen years and five months. Her most recent position, which she had held for approximately the previous eight years, was as a Licensing Specialist II with the DOE. Mrs. LeBlanc's duties involved investigation and inspection of both licensed and unlicensed daycare facilities. Accordingly, she worked from her home in Abbeville, Louisiana, and maintained in her possession for use in her work duties both equipment and files belonging to the DOE.

Beginning on July 7, 2015, Mrs. LeBlanc took temporary sick leave from her position for stress and mental health reasons stemming from alleged sexual harassment.[1] In correspondence dated November 2, 2015, from Shelia Campbell, Program Manager 2 - Social Services Division of Licensing, and copied to Mr. Jason Hannaman, the Human Resources Director, Mrs. LeBlanc was notified as follows:

> As of today, you have fewer than eight hours of sick leave and you are medically unable to perform the essential functions of your job as a

---

[1] Mrs. LeBlanc filed a separate workers' compensation Form 1008 claim on December 18, 2015, subsequent to her termination, claiming that her stress leave was due to the sexual harassment of a former supervisor. That claim was dismissed on summary judgment, which is now final and is not at issue herein.

Licensing Specialist. Therefore, I propose to non-disciplinarily remove you from your position under Civil Service Rule 12.6(a)1, which provides:

**12.6 Non-disciplinary Removals.**

(a) An employee may be non-disciplinarily removed under the following circumstances:

1. When, on the date of the notice required by Rule 12.7 is mailed, hand delivered, or orally given, the employee is unable to perform the essential functions of his job due to illness or medical disability and has fewer than eight hours of sick leave. An employee removed under this provision shall be paid for all remaining sick leave.

You have the right to respond to this proposed action. This is your opportunity to explain why you should not be removed. To be considered, your response should be received in writing by 1:00 p.m. on Wednesday, November 11, 2015. For your convenience, your response may be faxed . . . or emailed . . . .

Mrs. LeBlanc did not timely respond to the November 2, 2015 correspondence, and on November 13, 2015, she was sent correspondence from State Superintendent of Education, John White, informing her that she was to be formally removed from her position with the DOE pursuant to Civil Service Rule 12.6(a), effective "at the close of business on Sunday, November 22, 2015." Mrs. LeBlanc was further informed that since this was a non-disciplinary removal, she was entitled to retain certain eligibilities should she seek state employment in the future. The November 2, 2015 correspondence was also copied to Ms. Campbell, Mr. Hannaman, and Ashley Dorsey-Foster, Program Manager I - Social Services.

On December 8, 2015, Ms. Joan Hunt, Executive Counsel for the DOE, responded to letters dated November 9 and November 29, 2015, from Mrs. LeBlanc's attorney, Mr. Matthew McConnell, objecting to the DOE contacting Mrs. LeBlanc directly when she was represented by counsel. The DOE responded to Mr.

2

McConnell that it was entitled to "contact its employees directly regarding employment issues," despite Mrs. LeBlanc's "non-disciplinary removal" from her position in accordance with Louisiana Civil Service Rule 12.6(a)1. Accordingly, Mr. McConnell was also informed that the "Human Resources staff from the Department will be contacting Mrs. LeBlanc this week to schedule a date and time for her to return the following equipment owned by the Department." A listing of eleven items followed in the correspondence which Mrs. LeBlanc was expected to return to what was eventually determined to be the loading dock of the DOE's Claiborne Office Building in Baton Rouge, Louisiana. Testimony at the hearing revealed that the December 8, 2015 letter signed by Ms. Hunt had been prepared by Ms. Denise Brou, also an attorney for the DOE.

On December 9, 2015, in an email to Ms. Brou, counsel for the DOE, Mr. Hannaman, the DOE Human Resources Director, indicated that he had attempted to call Mrs. LeBlanc, but reached her father who advised that he needed to refer this request to her attorney, Mr. McConnell. Mr. Hannaman suggested to Ms. Brou that Mrs. LeBlanc's attorney be sent the attached list of equipment and that he be reminded that the equipment was state-owned property that must be returned to the DOE by Mrs. LeBlanc.

Also, on December 9, 2015, in an email from Mr. Hannaman to Ms. Brou, he indicated that Mrs. LeBlanc had left him a message to call her. Mr. Hannaman returned Mrs. LeBlanc's call, and she explained her situation. She told him she did not see how she could return the equipment from her home in Abbeville, Louisiana, as she had not received a release to work from her medical provider. The record reflects that Mrs. LeBlanc was being treated for Post-Traumatic Stress Syndrome (PTSD) and Acute Anxiety Disorder. Mr. Hannaman advised Mrs. LeBlanc that her

3

attorney had been notified about the equipment and that maybe she could coordinate with him. Mr. Hannaman testified at the hearing that after speaking with Mrs. LeBlanc for the first time on December 9, 2015, he learned she had been on medical leave prior to her termination and was not yet released to work by her medical provider.

Upon obtaining this information, Mr. Hannaman emailed Debbie Threeton, Operational Support Services Administrative Program Specialist for the DOE. In the email he informed Ms. Threeton that Mrs. LeBlanc was no longer an employee of DOE. He further stated, "We are working with her representatives to retrieve the property listed below . . . however we are unsure of the time it may take to retrieve these items." Mr. Hannaman requested that Ms. Threeton "deactivate any services currently attached to any of this equipment." Ms. Threeton responded that she intended to "temporally [sic] suspend the service to the iphone and the MiFi."

The email correspondence on December 9, 2015, appears to be the last contact made with Mrs. LeBlanc until the middle of January. Under direct examination at the hearing, Mr. Hannaman testified he did not mention to Mrs. LeBlanc anything about picking up what turned out to be seven boxes of files from her home, along with the listed equipment contained in the December 8, 2015 letter from Ms. Hunt. "Nor did anyone else say anything to him about picking up the files from her home."

Nonetheless, on cross-examination at the hearing, a discussion ensued about the ability of Mrs. LeBlanc to return the equipment when Mr. Hannaman was specifically asked:

> Q  So, you never said anything to Ladessa LeBlanc saying you have to return it by date X?
>
> A  I don't recall having something where I said having to return by date X. It was an attempt to retrieve the equipment in a timely fashion.

Q      Yes, your goal was to get the equipment back?

A      Right.  Because we have - -

Q      And as far as you know, or maybe you don't know about confidential case files, investigation files.  Is that your bailiwick?

A      No.  My only knowledge was of the equipment as outlined in this letter [December 8, 2015].  The technology.

Mr. Hannaman was then questioned on cross-examination about Mrs. LeBlanc's prior testimony that she had requested that the DOE come to her home in Abbeville, Louisiana, to pick up the equipment and file materials in her possession.

Q      Okay.  So[,] she requested at some point that the State come pick the stuff up?

A      I believe that there was, yes, there was - -

Q      In January.

A      Yes, January - - I think it was January 25, 2016, and then - -

Q      I'll show you an earlier one as well, see if your remember this, Exhibit B-4?

A      Is it 19?  And, I'm not sure.

Q      So it looks like on the 19th, she [Mrs. LeBlanc] said I'm requesting the State Office pick up their equipment from my home next week instead of this week?  Do you recall that"

A      I don't recall, but this is the email.[2]

Q      Okay, so at least on the 19th and then on the 25th, Exhibit B-5, she requested that the State pick the things up and at some point, I guess it was advised to her that the State wasn't going to be picking it up?  Or is this when we were all trying to communicate through various different people?

---

[2]  The email of January 19, 2016 indicated that Mrs. LeBlanc's children were ill with the flu and Mrs. LeBlanc did not want them to be present when the equipment was picked up by the DOE.  She further requested that certain members of the DOE staff not be present.  Finally, she stated, "please let me know when the State Office (LDOE) has made proper arrangements to pick up my equipment from my home next week."

A        I believe that's when we were trying to communicate through various different people.  It was - -I didn't,  again my understanding was that she was she was upset with the entire process and how things had unfolded, so sending someone to a private residence, I did not find to be - -

Q        Wouldn't work for you?

A        Wasn't going to be in the best interest of general safety.

During her testimony Ms. Brou indicated that Mr. Hannaman was her primary contact and that it was her understanding they were working through Mr. McConnell, Mrs. LeBlanc's attorney, to get the equipment back.  Ms. Brou testified, "that was good for us, because that took us out of the issue of sending a person, which we were not going to do, sending a person to her house.  If it got to his office, we'd have picked it up."

Ms. Brou testified she attempted to call Mr. McConnell twice, on January 22, 2016, and January 28, 2016, with no response.  However, a subsequent email from Mr. McConnell indicates he attempted to return Ms. Brou's call and was left on hold "indefinitely."  Nonetheless, on the afternoon of January 28, 2016, Ms. Brou sent an email requesting that Mr. McConnell assist with having Mrs. LeBlanc return the equipment, and enclosed a list of the items.  Later that same afternoon, Mr. McConnell forwarded Ms. Brou's email to Mrs. LeBlanc and stated, "I believe the plan was for you to get the property back to them."

On the morning of January 29, 2016, Mrs. LeBlanc sent an email to Mr. McConnell and copied Ms. Brou.  Her email indicated she had spoken with Ms. Brou and they had arranged for a return of all "State Issued Equipment" to the Claiborne Office Building on Wednesday, February 3, 2016, between 10:00 a.m. and 10:30 a.m.  Mc LeBlanc further indicated in her email that she had advised Ms. Brou that

6

she had attempted through various calls and emails to contact Mr. Hannaman, but had received no confirmation of how the return of the equipment was to be handled.

On the morning of January 29, 2016, at approximately the same time, Ms. Brou sent an email to Mr. McConnell confirming the return of the equipment on February 3, 2016, to the Claiborne Office Building, the location designated by the DOE. Ms. Brou also indicated, "Our Human Resources director, Jason Hannaman and I will meet her to receive the equipment." Mr. McConnell responded to Ms. Brou, "Thank you. I wasn't aware she would do that. Sounds like it is being handled."

As instructed by Ms. Brou, on the morning of February 3, 2016, Mrs. LeBlanc and her father, Francis Plaisance, loaded up the equipment, which also included the filing cabinet and seven boxes of files, for return to the Claiborne Office Building, in Baton Rouge, Louisiana. Due to the heavy traffic, they were unable to make the anticipated 10:00 to 10:30 a.m. time of delivery. Mrs. LeBlanc called and notified Ms. Brou's administrative assistant that they would not arrive until 1:00 p.m.

Mrs. LeBlanc had been told that either Ms. Brou or Mr. Hannaman would meet her, neither were available when they arrived at the designated DOE office at the Claiborne Building. Mr. Hannaman was home with a sick child and Ms. Brou was otherwise engaged at the actual delivery time of 1:00 p.m. Mrs. LeBlanc and her father were instructed by Aarika Spruel-Dorcy, Mr. Hannaman's second in command, to go to the back of the building to the loading dock where they were met by Ms. Spruel-Dorcy. Ms. Brou testified that she never told Mrs. LeBlanc that someone would "help them unload anything," but that "someone will meet you… it wasn't arranged for somebody to load boxes. No."

On cross-examination, Ms. Brou admitted that the files in Mrs. LeBlanc's possession contained "criminal background checks," "social security numbers," and "identifiable information for minors and their health information," which she agreed was confidential and should have been returned to the DOE or shredded.

Further, although the DOE did not make a formal demand that the files be returned, Ms. Brou testified that in a telephone conversation with Mrs. LeBlanc "she mentioned something about the files to me, and I didn't tell her not to bring them, … so she was going to bring them and I just said, fine.  We'll see you then."  When asked if she agreed that Mrs. LeBlanc could bring the files, Ms. Brou responded, "Yeah, I didn't tell her she couldn't, so if that's agreeing, yeah. I agreed."

Additionally, on cross examination, Ms. Brou clarified that the DOE had made it clear that it had the right to communicate with Mr. McConnell's client, Mrs. LeBlanc, based on her prior employment and the requirement that she return the DOE's property.  Therefore, it would have been consistent with the DOE's letter of December 8, 2015, for the DOE to coordinate with Mrs. LeBlanc for the return of the property.  When Ms. Brou was questioned about how Mr. McConnell became involved, she agreed that both Mrs. LeBlanc and Mr. McConnell were attempting to work with the DOE for the return of the property, but ultimately Mrs. LeBlanc was responsible for the return of the DOE's property.

 On February 3, 2016, Ms. Spruel-Dorcy oversaw the return by Mrs. LeBlanc and her father of the equipment, the filing cabinet, and seven boxes of files to the loading dock at the Claiborne Office Building, as designated by the DOE.  After the equipment was returned on February 3, 2016, there was an email exchange between Ms. Spruel-Dorcy and Ms. Brou wherein Ms. Spruel-Dorcy discussed the details of

the return of the DOE property by Mrs. LeBlanc. Ms. Spruel-Dorcy reported that the items were returned and taken to "Licensing."

It was during unloading of the DOE's property, more specifically the files, that Mrs. LeBlanc claims she injured her shoulder, neck, elbow, wrist, and right hand, for which she required medical attention later that day. Her claimed injuries ultimately led Mrs. LeBlanc to file a Form 1008 seeking workers' compensation benefits. The WCJ found in favor of the DOE on the basis that Mrs. LeBlanc had been terminated on November 22, 2015, and therefore was no longer in the course and scope of her employment at the time of her alleged injury on February 3, 2016. It is from the WCJ's December 11, 2017 judgment that Mrs. LeBlanc has timely appealed.

## ASSIGNMENT OF ERRORS

Mrs. LeBlanc appeals the WCJ's ruling asserting four assignments of error:

1. The trial court's finding, that Le[B]lanc's injury did not occur within the reasonable period of time after termination for winding up her affairs, was legal error. *Ardoin v. Cleco Power, L.L.C.*, [10-815] (La. [7/2/10]), 38 So.3d 264, 266 [ ] holds that to determine whether an employee's post-termination injury while winding up the employment occurred within a reasonable period of time, *i.e.*, within the course and scope of work, there are two relevant factors:

   a. the purpose that prompted the employee to return, and

   b. the relationship between that purpose and the conditions surrounding his work.

   The trial court distinguished Le[B]lanc's case from *Ardoin* because of time, which is not a relevant factor per *Ardoin.* The trial court erred because it did not consider the *Ardoin* factors and only considered time.

2. Where Le[B]lanc was motivated by the employer's requirement that she return the employer's property to the employer's premises to wind up her employment, the trial court legally erred by failing to consider the two *Ardoin* factors but instead strictly count[ed] time/days between termination and injury.

9

3. Where Le[B]lanc was unable to report to work for health reasons when she was terminated for running out of sick leave and where her superiors required her to return the employer's property to the employer's premises but told Le[B]lanc she could return the property whenever she felt she could, *i.e.*, to take all the time she needed, the trial court legally erred by failing to consider the two *Ardoin*, factors but instead strictly count[ed] time/days between termination and injury to determine course and scope.

4. The trial court legally erred in failing to find that Le[B]lanc suffered a disabling injury within the course and scope of her employment and in failing to award indemnity and medical benefits as well as attorney's fees and penalties for the denial.

## LAW AND DISCUSSION

### *Standard Of Review*

Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. La. Dep't. of Corrs.*, 93-1305 (La. 2/28/94), 633 So.2d 129. Nevertheless, "when legal error interdicts the fact-finding process in a workers' compensation case, the manifest error or clearly wrong standard of review no longer applies and *de novo* review of the matter is required." *Gaines v. Home Care Solutions, LLC*, 15-895, p. 9 (La.App. 4 Cir. 4/6/16), 192 So.3d 794, 801 (citing *Marti v. City of New Orleans*, 12-1514 (La.App. 4 Cir. 4/10/13), 115 So.3d 541), *writ denied*, 16-847 (La. 6/17/16), 192 So.3d 765. "'Likewise, interpretation of statutes pertaining to workers' compensation is a question of law and warrants *de novo* review to determine if the ruling was legally correct.'" *Id.* (quoting *Tulane Univ. Hosp. & Clinic v. Lockheed Martin Corp.*, 11-0179, p. 3 (La.App. 4 Cir. 6/29/11), 70 So.3d 988, 990).

"An employee's exclusive remedy against his employer for injuries suffered in the course and scope of his employment is limited to recovery pursuant to the Workers' Compensation Act. [La.R.S.] 23:1032." *Ardoin v. Cleco Power, L.L.C.*,

10

10-815, p. 2 (La. 7/2/10), 38 So.3d 264, 265. This case involves the statutory interpretation of the "course and scope" of an employee's employment after termination. Therefore, we will conduct a *de novo* review of the WCJ's ruling in favor of the DOE which found that that Mrs. LeBlanc did not carry her burden of proof that she was in the "course and scope" of her employment at the time of the incident at issue.

## Assignment of Errors One, Two and Three

Mrs. LeBlanc's first three assignments of error all urge that the WCJ failed to apply the two relevant factors described by the supreme court in *Ardoin*, 38 So.3d 264, which apply when a determination must be made by the trial court as to whether and under what circumstances an employee who has been terminated is still entitled to the protections of the Workers' Compensation Act. Accordingly, we will address these three assignments of error together.

In *Ardoin*, the Louisiana Supreme Court explained:

> An employee's exclusive remedy against his employer for injuries suffered in the course and scope of his employment is limited to recovery pursuant to the Workers' Compensation Act. La.[R.S.] 23:1032. Larson's *Workers' Compensation Law,* § 26.01 instructs:
>
>> Compensation coverage is not automatically and instantaneously terminated by the firing or quitting of the employee. The employee is; deemed to be within the course of employment for a reasonable period while winding up his or her affairs and leaving the premises. The difficult question is what is a reasonable period?
>
> *See also*, *Livings v. Reliance Ins. Co.*, 525 So.2d 620, 622 (La. Ct.App. 3 Cir.1988), *writ not considered*, 530 So.2d 557 (La.1988); *Matthews v. Milwhite - Mud Sales Co.*, 225 So.2d 391, 395 (La. Ct.App. 3 Cir.1969), *writ denied*, 254 La. 772, 226 So.2d 526 (1969), *writ refused*, 255 La. 149, 229 So.2d 732 (1970). The court of appeal correctly observed the few cases dealing with a terminated employee seeking workers' compensation benefits have been addressed by extrapolating from situations dealing with employees injured on the employer's premises before or after work. *Ardoin*, 09-1085 at p.2, 33 So.3d at 422.

11

> If the injury occurs during the reasonable period of time for winding up his affairs, the employee is considered to be within the course and scope of employment. *Livings, supra; Matthews, supra; see also Carter v. Lanzetta*, 249 La. 1098, 193 So.2d 259, 261-262 (1966).

*Ardoin*, 38 So.3d at 265-66.

The *Ardoin* court further instructed that the relevant factors to be considered in determining whether an injury occurred within a reasonable time for winding up an employee's affairs are "the purpose that prompted him to return and the relationship between that purpose and the conditions surrounding his work. *See* 13 H. Alston Johnson III, *Louisiana Civil Law Treatise–Workers' Compensation*, § 167, p. 336 (4th ed 2002)." *Ardoin*, 38 So.3d at 266.

The *Ardoin* court then found that based on the facts in that case "Ardoin was within a reasonable period of time to wind up his affairs," and stated:

> Ardoin was on the Eunice premises with Cleco's permission to clean out his office after being terminated. Cleco allowed Ardoin to do this on the Monday following the discharge that occurred on Friday in Opelousas. It is immaterial that Cleco avers it considered any of its property Ardoin attempted to return on Monday insignificant . . . . It was undisputed that Cleco permitted Ardoin to go to his office on Monday to remove his personal effects. Under these circumstances, we find as a matter of law Ardoin was within a reasonable period of time to wind up his affairs.

*Id.* (Citation omitted.)

### Workers' Compensation Judge's Reasons for Ruling

The WCJ, after summarizing the testimony of the individuals from the DOE involved in the attempt to retrieve the property of the DOE from Mrs. LeBlanc, distinguished *Ardoin* only on the basis of the amount of time that it took for Mrs. LeBlanc to coordinate with the DOE employees to facilitate the return of the equipment and files in her possession: "The Court finds that this case is distinguishable from *Ardoin* in that Ardoin was discharged on a Friday, and the next

12

Monday Ardoin was injured cleaning out his office. In this case, the alleged accident was 73 days from termination and 56 days from the December 8, [2015] correspondence."

In only considering the time period between Mrs. LeBlanc's termination on November 22, 2015 and the December 8, 2015 correspondence from the DOE, to the time of Mrs. LeBlanc's injury on February 3, 2016, the WCJ failed to apply the two relevant factors of *Ardoin* which must be examined in order to determine "what was a reasonable period of time for the winding up" of employment. *Id.*

The Louisiana Supreme Court in *Ardoin* instructed that the first factor to be considered is the "purpose" that required Mrs. LeBlanc to return to the DOE's Claiborne Office Building location in Baton Rouge, Louisiana. In Mrs. LeBlanc's case, she worked remotely in Abbeville, Louisiana. Her work as a Licensing Specialist II inspecting daycare centers required her to work out of her home in Abbeville, Louisiana, and have in her possession certain equipment and file materials which the DOE demanded be returned after her termination on November 22, 2015. The record is clear that Mrs. LeBlanc was at the Claiborne Office Building on February 3, 2016, at the invitation, indeed the demand, of the DOE for her to return the equipment and, arguably, the files belonging to the DOE.

The second factor in *Ardoin* requires a consideration of the "relationship" between the purpose of the return to the DOE premises and the conditions surrounding her work. As previously stated, Mrs. LeBlanc worked remotely, and therefore, the equipment and files necessary for her employment with the DOE were kept at her home in Abbeville. Once again, the DOE expected and required that those items in Mrs. LeBlanc's possession be returned, and required that they be delivered to the DOE's Claiborne Office Building location, as the DOE refused to

13

send someone to pick up the files and equipment from Mrs. LeBlanc's home, citing "security reasons."

As in *Ardoin*, we find the two required factors have been met. Mrs. LeBlanc was at the Claiborne Office Building at the instruction of the DOE to return the equipment and files in her possession as required by her former employer for the "winding up" of her employment. The question then becomes whether the return of her equipment and files on February 3, 2016, constitutes a reasonable period of time to consider Mrs. LeBlanc to still be in the course and scope of her employment with the DOE.

The WCJ only counted the days between her termination on November 22, 2015 and the letter from the DOE on December 8, 2015 and the February 3, 2016 return of the equipment. We find under the facts of this case that the DOE never set a date certain for the return of the equipment, and it was further aware of Mrs. LeBlanc's medical condition when the initial request for return of the equipment was made in the December 8, 2015 correspondence.

Further, the emails and testimony at the hearing reflect that Mrs. LeBlanc and her counsel engaged in good faith negotiations with the staff at the DOE, who by their own admission did not set a deadline for the return of the equipment and file materials by Mrs. LeBlanc. The testimony and documentation support a finding by this court that there was no agreement reached between Mrs. LeBlanc and the DOE for the required return of the equipment and file materials until Friday, January 29, 2016. All parties then agreed upon a date certain, February 3, 2016. This date is confirmed in an email correspondence between Ms. Brou, counsel for the DOE, and Mr. McConnell, counsel for Mrs. LeBlanc. Considering that January 30 and 31, 2016, were weekend days, only two business days elapsed before the return of the

14

equipment and files by Mrs. Leblanc and her father on February 3, 2016, to the DOE. Accordingly, we find that Mrs. LeBlanc acted within a reasonable period of time to wind up her affairs with the DOE and therefore was within the course and scope of her employment when she claims she was injured while unloading file boxes at the DOE's facility in accordance with the DOE's request.

*Assignment of Error Four*

In her assignment of error number four, Mrs. LeBlanc claims the trial court legally erred by failing to find that her injury was in the course and scope of her employment and that she was entitled to indemnity and medical benefits, in addition to attorney fees and penalties. The WCJ found that Mrs. LeBlanc was not in the course and scope of her employment with the DOE and thus not entitled to workers' compensation benefits resulting from her claimed injuries. Therefore, the WCJ made no ruling on whether or not Mrs. LeBlanc suffered disabling injuries while unloading DOE's property at its facility.

Moreover, in its "ANSWER WITH A REQUEST FOR PRELIMINARY DETERMINATION," the DOE specifically outlined several alternative requests for relief if the WCJ, or by extension this court, were to find the "Defendant [DOE] liable for any workers' compensation benefits." In Paragraph 2, of its answer, the DOE seeks "entitlement to any offset and/or offsets as per La. R.S. 23:1225 and/or La. R.S. 23:1212 and/or La. R.S. 23:1223 and/or La. R.S. 23:1206." In Paragraph 3, the DOE "reserves the right to amend its answer to plead the affirmative defenses of misrepresentations as per La. R.S. 23:1208 and in particular, Section (E) of 23:1208 and La. R.S. 23:1208.1."

Therefore, considering that this court has found that Mrs. LeBlanc was within the course and scope of winding up her employment with the DOE, and thus is

15

covered by the workers' compensation act, La.R.S. 23:1032, we do not make any determination of the specific benefits, attorney fees or penalties, if any, to which she may be entitled and that may be owed by DOE. Instead we remand all remaining issues to the WCJ to determine Mrs. LeBlanc's right to workers' compensation benefits and all related issues.

## CONCLUSION

Based on the foregoing, we reverse the Workers' Compensation Judge's December 11, 2017 judgment in favor of the Louisiana Department of Education and find that claimant Ladessa Carol LeBlanc was within the course and scope of her former employment with the Louisiana Department of Education on February 3, 2016. All remaining issues are remanded to the Workers' Compensation Judge for decision consistent with the opinions expressed herein. All costs of this proceeding are assessed to the Louisiana Department of Education.

**REVERSED AND REMANDED.**